## INDUSTRIAL LUMBER COMPANY v. DENNIS M. BIVENS.

Decided November 6, 1907.

**1.—Assignment of Error—Proposition not Germane.**

A proposition which is not germane to the assignment of error under which it is made is not entitled to consideration. Assignments and a proposition thereunder considered, and held that the proposition was not germane to the assignments.

**2.—Personal Injuries—Future Damages.**

In order to entitle one to recover future damages for personal injuries it is only required that the evidence should show a reasonable probability of future ill effects from the injury. It is not necessary that the proof show a *reasonable certainty* of future ill effects.

**3.—Personal Injury—Elements of Damage—Charge.**

In a suit for personal injuries there are usually three elements of damage proper to be considered by the jury: (1) Physical and mental suffering endured up to the time of the trial: (2) Such physical and mental suffering as it is reasonably probable the injured party will endure in the future, and (3) impaired or diminished future earning capacity reasonably consequent upon the injury. Charge considered, and held not subject to the objection that it allowed a recovery twice for the same element of damage.

**4.—Special Charge—Modification—Practice.**

Complaint can not be made of a modification by the court of a requested charge unless it would have been error to refuse the charge as asked.

**5.—Master and Servant—Extraordinary Risk—Duty of Master—Negligence.**

It is the duty of the master to instruct a servant as to all risks which are abnormal or extraordinary and of such kind that the servant can not be held chargeable with an adequate comprehension of their nature and extent, or of the proper means to safeguard himself. This duty is nondelegable, and the failure of the master to perform it is negligence *per se.*

**6.—Master and Servant—Safe Machinery—Nondelegable Duty.**

The duty of a master to use ordinary care to furnish his servant with safe machinery, etc., is personal to the master and can not be delegated; hence the fact that a vice-principal of the master had no knowledge of the defects in the machinery which caused the injury, will not exonerate the master from the consequences of his failure to perform said duty.

**7.—Same—Negligence—Unforeseen Consequence.**

When the negligence of the master is calculated or likely to cause injury, the master is liable for any injury proximately resulting therefrom, and the fact that the precise injury which did occur was unforeseen or improbable, is immaterial.

**8.—Contributory Negligence—Question of Fact.**

Whether or not a servant was guilty of contributory negligence in leaving his particular place of duty at the time he was injured, is a question of fact for the jury.

**9.—Evidence—Withdrawal from Jury—Practice.**

Where evidence on an issue has been admitted over objection, the failure

cf the court afterwards to submit such issue to the jury as effectually with-
draws from the jury such issue and the evidence bearing thereon as if the
jury were specially instructed to that effect.

**10.—Assumed Risk—Advice of Superior.**

Where the danger from certain defective machinery was not so obvious but
that one of ordinary experience and observation would continue to use the
same, a servant does not assume the risk of injury therefrom when he con-
tinues to use the same upon the assurance of his foreman and superior that
there is no danger.

Appeal from the District Court of Jefferson County. Tried below
before Hon. L. B. Hightower, Jr.

*Baker, Botts, Parker & Garwood* and *Parker & Hefner,* for appel-
lant.—To entitle plaintiff to recover for future damage there must be
a reasonable certainty as to such future damage; a mere probability
of its occurrence is not enough. Missouri Pac. Ry. Co. v. Mitchell,
75 Texas, 80; Louisville Southern R. R. Co. v. Minogue, 90 Kentucky,
369; 29 Am. St. Rep., 381.

The court's charge on the measure of damages was misleading and
confusing to the jury, and tended to induce them to allow double dam-
ages. International & G. N. Ry. Co. v. Butcher, 98 Texas, 462; Mis-
souri, K. & T. Ry. Co. v. Nesbit, 40 Texas Civ. App., 209.

A special charge requested should be either given in the language
requested or refused. If qualified, it should be rewritten, and not
qualified by an addition in the nature of a proviso which specially
emphasizes certain conditions which would defeat the defense submitted
in said charge. Southern Cotton Press & Mfg. Co. v. Bradley, 52
Texas, 602; Willis v. Hudson, 72 Texas, 608; Missouri Pac. Ry. v.
Williams, 75 Texas, 8.

A defendant has the right to demand that all of his defenses be
affirmatively presented, and that the law be applied to the facts in evi-
dence in support of each of such defenses. Missouri, K. & T. Ry. Co.
v. McGlamory, 89 Texas, 635; Neville v. Mitchell, 66 S. W. Rep., 579.

The court erred, to the prejudice of this defendant, in paragraph
No. 3 of its general charge to the jury, in charging them in the
following language:

"I charged you that, when an employer employs a minor and places
him in a position where such employe is exposed and subject to danger
threatening his life, or bodily injury, and such employe does not know
of such dangers, and does not know of the extent of such dangers and
how to avoid them, and such employer is aware of such want of knowl-
edge on the part of such employe, or by the use of ordinary care on his
part ought to have been aware of the same, it then becomes the duty
of such employer to warn such employe of the dangers attendant upon
such employment, and to warn him of the extent of such dangers, and
how to avoid injury therefrom; and when an employer is guilty of a
failure in these respects towards an employe, then he is in law deemed
guilty of negligence in respect to such failure, and if such employe be
caused to sustain injury in consequence of such negligence, without
contributory negligence on his part at the time, the employer would
be liable." Bering Mfg. Co. v. Femelat, 79 S. W. Rep., 872; Texas

& Pac. Ry. v. Murphy, 46 Texas, 366; Gulf, C. & S. F. Ry. v. Gascamp, 69 Texas, 546; Willoughby v. Townsend, 18 Texas Civ. App., 725; Baker v. Ashe, 80 Texas, 361.

*Hardy & Hardy* and *McCoy & Moss,* for appellee.

NEILL, ASSOCIATE JUSTICE.—This suit was brought by Dennis Bivens against the Industrial Lumber Company to recover damages for personal injuries sustained by him through the alleged negligence of the defendant, while in its employ as operator of a trip machine in its sawmill at Vinton, La. The defendant pleaded not guilty, contributory negligence, assumed risk and negligence of a fellow servant. The trial resulted in a verdict and judgment in favor of the plaintiff for $6,000.

His injuries were inflicted on March 31, 1904. At the time they were sustained he was a minor, and was also a minor when the case was tried, but his disabilities had been removed in accordance with the laws of the State of Louisiana, where he resided before the suit was instituted.

To comprehend the nature of the case it is necessary to describe the machinery and appliances of the sawmill and the manner in which they were operated at the place and time the plaintiff was injured. There is a carriage track upon which the carriage runs that conveys the logs to the circular saw. In front of the saw, in the direction the logs are carried, is a table called the "live roller table," which is about four feet wide and about seventy-two feet long. Extending across this table are a number of rollers about an inch in diameter, about half of the circumference extending above the top of the table, the other half being below the surface. They are about four feet apart, and when in operation all revolve (if in proper working order) with equal motion in the same direction that the circular saw does. One of these rollers, however, which was near the far end of the table, and beyond the space between the edger table and edger saws, and where plaintiff was standing, which are hereinafter described, was out of fix so that it did not revolve, and was in such condition as to be called "dead" by the witnesses to the accident, and had been in such defective condition for several days prior thereto.

Facing from the circular saw, to the left of, and about five feet from and parallel with the roller table, is another, called the "edger table," which is about four feet wide and twelve feet long, the end nearest the circular saw being about forty-four feet from it. About twelve inches beyond this table, and parallel with the end of it, are installed upon the same plane what are called "edger saws," four in number. There are two endless chains, eight or nine feet apart, parallel with each other, extending from the live roller to the edger table, the office of which will be explained in describing the purpose and operation of the machinery and appliances of the sawmill. These chains, when made to perform their office, are operated by means of a lever, moved by the pressure of the foot of one called the "tripman," who stands about fifty-six feet from the end of the live roller table nearest the circular saw, and between such table and a twelve-inch space separating the

edger table from the edger saws. He stands nearer the live roller table and faces the end nearest the saw track. There was no partition or stanchion in or opposite the space between the edger table and the edger saws to protect one opposite said space from the saws, which were exposed, or prevent him from being thrown against them in the way plaintiff was, as will be hereinafter explained.

In running the sawmill the logs were placed upon the carriage and carried thereon to and through the circular saw, then carried back and run through the saw again, this process being repeated until the sawing of the log was finished at such saw. The slabs and lumber into which the log was thus sawed were then placed upon the live roller table, and such pieces as were not fit for use were carried over the table by the operation of its rollers to the far end, and thrown off into the "refuse pit," and such pieces as were to have the edges trimmed were likewise carried over the live rollers in the same manner opposite the edger table until they were upon the endless chains hereinbefore described, when the tripman, by pressing the lever, caused them to be lifted from such table and carried over the chains to the edger table, from which they were run through the edger saws by the edger-saw man and their edges trimmed off.

At the time plaintiff was injured he was a tripman, operating the trip lever, and had only been in such employment three days up to that time. On this occasion a log thirty feet long was being run through the circular saw in the manner before described. Three slabs had been sawed from different sides of it and carried off by means of the live rollers and thrown into the refuse pit. A slab was then sawed off the fourth side of the log and placed upon the live roller table to be carried off in the same manner as the other three were. The slab, on account of the log being crooked, the curvature being on the side from which it was taken, was much thicker at each end than it was in the middle, the thickness decreasing from either end towards the middle of the slab. On account of the unevenness of the slab it did not touch and receive the force of all the rollers, and when its furthest end reached the "dead" roller it slowly passed over it and its end caught against the roller just beyond. In the meantime another slab had been sawed off which, together with a piece of timber which was 12 inches by twelve inches in thickness, made by the remainder of the log, was placed upon the live rollers to be conveyed thereover. This slab and piece of timber were conveyed over the rollers more rapidly, for the reason above stated, than the slab preceding it, which we have just described, and therefore pushed against the near end of the slab with such force as to cause it to break in the middle, and the plaintiff, who was standing at or near the place where the trip lever was operated, in the discharge of the duty of his employment, was struck on his side by the broken end of the piece of the slab, against the end of which such timbers were pushed, and knocked thereby over the near corner of the edger table onto a plank, the edges of which were being trimmed, and was either carried thereon or thrown against the edger saws, which were in operation, and thereby sustained serious, painful and permanent physical injuries.

The evidence, in relation to the injuries sustained by the plaintiff

in the manner above stated, was sufficient to warrant the jury in find-
ing that the defendant was negligent in one or more of the following
grounds, averred by plaintiff:

(1) In putting plaintiff to work in a dangerous place without in-
structing or warning him of the danger incident to his employment,
he being at the time, on account of his age and inexperience, ignorant
of such danger.

(2) In allowing one of the rollers in the live roller table to become
out of repair and "dead," so it would not perform its office.

(3) In failing to erect a wall or stanchion between the position oc-
cupied by plaintiff while at work and the edger saws against which
he was thrown and injured.

The evidence is also reasonably sufficient to warrant the jury in find-
ing that one or more of such acts of negligence was the approximate
cause of plaintiff's injuries, and that such injuries were not caused by
the negligence of any of his fellow servants, or by his own contributory
negligence, or from any risk assumed by him as incident to his em-
ployment.

*Conclusions of law.*—1. We are unable to detect anything in the ac-
tion of plaintiff's counsel, complained of in the first assignment, which
was calculated in the least to suggest to the jury that an insurance
company, or anyone other than the parties to this action, was inter-
ested in or would be affected by the result of the trial.   Therefore the
principle enunciated in the cases of Lone Star Brewing Co. v. Voith,
84 S. W. Rep., 1100; Harry v. Brady, 86 S. W. Rep., 616, and Beau-
mont Traction Co. v. Dilworth, 94 S. W. Rep., 352, has no applica-
tion in this case.

2. The second and third assignments of error are grouped and con-
sidered together in appellant's brief.   The second complains of the
10th paragraph of the charge, which is as follows:

"Now if, under the foregoing instructions, you shall find in favor
of the plaintiff, you will allow him such a sum of money by your ver-
dict as in your judgment will be a fair and reasonable and just com-
pensation for the injury, if any, which has been sustained, and in
measuring the same you will consider the pain and suffering that he
has undergone, both mentally and physically, if any, in consequence
naturally and probably of the injury sustained by him, and such pain
and suffering, if any, both mental and physical, as the evidence may
show you he reasonably and probably will suffer in future consequence
of such injury, if any; and if you find from the evidence that the in-
jury sustained by him was of a permanent nature, and that on account
thereof his capacity to labor and earn money has been diminished and
permanently impaired, then in addition to such damages as you may
allow him for the pain and suffering, as above explained, you will also
allow him such a sum of money as, if paid now, would be a just, fair
and reasonable compensation to the extent of his impairment or dimin-
ished capacity to labor and earn money in the future, between the time
that he will have arrived at the age of twenty-one years, and so long
as you find from the evidence he will probably live; but you can not
allow him anything for loss of time between the date he was injured

and the time when he will be twenty-one years of age, or for his diminished capacity to labor and earn money during that period of time, if any." The error assigned is that it "authorized and required the jury to allow double damages, or, in other words, allowed compensation twice for the same elements of damage."

The third complains of the court's refusal to give, at defendant's request, special charge No. 7, which is as follows: "If, under the other charges given you, you should find for the plaintiff in any amount whatever, then you are instructed that the burden is upon the plaintiff to establish how, if at all, he was injured, and the burden is upon the plaintiff to establish the nature and extent of his injuries, if any, by a preponderance of the evidence, just as he is required to establish any other feature or element in the case, and in considering the nature and extent of plaintiff's injuries, if any, you will not speculate upon what might have been the result of plaintiff's falling into the edger saws, or what might have been the result of the injuries actually received, if any, but you will consider only such injuries as the preponderance of the evidence shows the plaintiff did actually sustain, and you will in no event render a verdict for any damages except such as plaintiff has shown by a preponderance of the evidence that he has sustained."

The first proposition under these assignments is: "The charge of the trial court upon the measure of the damage in effect reverses the true rule as to the burden of the proof, and that it was prejudicial to refuse defendant's special charge No. 7, stating the correct rule." No such ground of error as is embraced in this proposition was assigned to the tenth paragraph of the charge, and, therefore, the proposition cannot be presented under the second assignment of error, and will, therefore, not be considered in relation to it. Nor can the proposition as an entirety be deduced from the assignment which complains of the refusal of the court to give the requested special instruction. And it can not, in the absence of the objection in the second assignment, that the part of the court's charge referred to contravenes the rule as to the burden of proof, be evolved from both assignments taken together. If it be permissible for us to take and consider the latter part of it, which only relates to the refusal of the special charge, as a proposition, we will say that such charge was properly refused. "How plaintiff was injured" and "the nature and extent of his injuries" were matters essential to his recovery of the damages sued for. The court, in its main charge, after submitting to the jury the questions of fact necessary to plaintiff's recovery, instructed it that the burden was upon him to prove, by a preponderance of evidence, the facts necessary to make out his case. Under this charge the verdict could not have been returned without the jury's finding, from a preponderance of the evidence, how plaintiff was injured and the nature and extent of his injuries.

The second proposition is, that "to entitle plaintiff to recover for future damages there must be a reasonable certainty as to such future damages; a mere probability of its occurrence is not enough." It is apparent from its face that this proposition is not germane to the

second assignment. If it may be deemed relevant to the third assignment, and if, in view of the manner of its presentation, it be proper for us to give it consideration, then we have to say: That proof to *a reasonable certainty* that damages will accrue in the future to one by reason of his personal injuries, is more proof than the law requires. It is only required that the evidence should show a reasonable probability of the occurrence of future ill effects of the injury. Gulf, C. & S. F. Ry. v. Harriett, 80 Texas, 73; Cameron Mill, etc., Co. v. Anderson, 34 Texas Civ. App., 229; Gulf, C. & S. F. Ry. v. Garrett, 99 S. W. Rep., 164.

The charge on the measure of damages was not misleading, nor calculated to confuse the jury, nor tend to induce it to allow double damages. It is clearly distinguishable from and in no wise contravenes the opinion of the Supreme Court in International & G. N. Ry. v. Butcher, 98 Texas, 462. In that case, as we observed in Texas & N. O. Ry. v. McGraw, 43 Texas Civ. App., 247, "the charge authorized the jury to assess damages that would fairly compensate Butcher for the physical and mental suffering, past and future, and the probable effect of the injuries, upon his health, mental and physical, and any impairment of his ability to pursue the course of life he might have done but for his injuries, and his probable decreased mental and physical capacity to labor and earn money." In this case the jury was instructed to allow plaintiff such a sum of money as would be a fair, reasonable and just compensation for the injury sustained; and, in measuring the compensation, to consider the mental and physical pain and suffering he had undergone as the natural and probable consequence of the injury; and, in addition, to consider such pain and suffering, mental and physical, as the evidence should show he reasonably and probably would suffer in the future in consequence of such injury; and then, if the jury should find that the injury was of a permanent nature, and, on account of it, plaintiff's capacity to labor and earn money had been diminished and permanently impaired, in addition to such damages as may have been allowed for pain and suffering, as before explained, to allow him such sum of money as would be a just, fair and reasonable compensation to the extent of his impairment or diminished capacity to earn money in the future, from the time he would be twenty-one years old as long as he would probably live. This shows three separate and distinct elements of damage to be considered in determining such sum of money as would be a fair, reasonable and just compensation for the injury sustained: (1) physical and mental suffering endured up to the time of trial; (2) such physical and mental suffering as was reasonably probable he would endure in the future; (3) impaired or diminished future earning capacity, reasonably consequent upon his injury, after he should attain his majority. That all those are elements of damages, recoverable *in a proper case for personal injuries*, there can be no doubt. It is equally apparent that they are so submitted by the charge that no one of the grounds overlaps the others so as to allow a finding of double damages, as did the charges in the Butcher case and in the cases of the Missouri, K. & T. Ry. Co. v. Nesbit, 40 Texas Civ. App., 209; Texas & N. O. Ry. Co. v. McGraw, *supra,* and Ft. Worth & R. G. Ry. v. Morris, 101 S. W. Rep., 1038. But the

charge is just such as was upheld in the case of International & G. N. Ry. Co. v. Wray, 43 Texas Civ. App., 380, and in many other like cases.

(3) There was no error in the court's giving defendant's special charges Nos. 23 and 24, with the qualification appended to each, nor in refusing special charge No. 3, as is complained of in the fourth, fifth and sixth assignments of error. No interlineations or erasures were made by the court in either of the special charges, as in the case of Cotton Press Co. v. Bradley, 54 Texas, 602. Had either of the special charges been given without modification, or had not special charge No. 3 been refused, plaintiff's right to recover would have been defeated, though his injury might have been proximately caused by the negligence of the defendant, or of its vice-principal, concurring with the negligence of plaintiff's fellow servant. It therefore would have been error to have given the charges as requested. The rule is that complaint can not be made that a charge asked was given with modifications, unless it would have been error to refuse the charge as asked. Willis v. Hudson, 72 Texas, 598; Missouri Pac. Ry. Co. v. Mitchell, 75 Texas, 9; St. Louis, I. M. & S. Ry. Co. v. Berry, 42 Texas Civ. App., 470.

(4) There is no error in the part of the charge complained of by the seventh assignment of error. When the third paragraph, of which only a part is complained of by the assignment, is read in connection with other portions of the charge, relating to the duty of the master to use ordinary care to avoid exposing his servants to extraordinary risks, which they could not reasonably anticipate, it will be seen that the court's charge is an admirable presentation of the law upon the subject, and one that might well be taken as a model.

The duty of the master to instruct a servant as to all risks which are abnormal or extraordinary, and of such kind that the servant can not be held chargeable with an adequate comprehension of their nature and extent, or of the proper means to safeguard himself, is nondelegable, and the failure of the master to perform such duty is negligence *per se;* just as it is for him to fail to discharge any other duty towards his servant which the law, common or statutory, imposes on him. Labatt's Master and Servant, sec. 240; Shear & Redf. Neg., sec. 203. Nor did the court err in refusing special charge No. 18, requested by defendant, because it was argumentative, and on the weight of evidence.

(5) The twenty-second special charge requested by defendant, the refusal of which is the subject of the ninth assignment of error, after reciting the testimony of the plaintiff as to the occurrence of the accident, proceeds as follows: "In this connection you are charged that for a mere accident, or coincidence, or unusual or unexpected combination of circumstances, no employer is liable, and unless you believe from the evidence that there was a "dead" roller where plaintiff says there was, and unless you further believe from the evidence that plaintiff's superiors, Quaty or Finley, knew that the roller was dead, at the time of plaintiff's injuries, or in the exercise of reasonable and ordinary care should have known it; and unless you believe from the evidence that an ordinarily prudent person, knowing that the roller was dead, could have reasonably anticipated that the fact of that roller's

not turning would probably cause plaintiff to be struck by a timber, as he was; then that, unless you find all these matters heretofore stated to be true, the condition of that roller, if it was dead, was not, under the law, the proximate cause of the injury, and defendant can not be liable on account of same, and you will find in favor of defendant on this issue."

The vice in the requested charge is apparent upon its face. It makes the knowledge of plaintiff's foremen, Finley and Quaty, of the defective roller, and that such defect would probably cause plaintiff to be struck by a timber, as he was, essential to his recovery upon the ground of defective machinery or appliances. The duty of the master to use ordinary care to furnish his servant with reasonably safe tools, machinery and appliances, and to exercise such care to keep them reasonably safe for his servant's use, is a duty personal to the master, and can not be delegated, and the lack of knowledge on the part of a servant of the master, superior to the one injured, of the defect in the machinery or appliances which caused the injury, will not exonerate the master from the consequence of his failure to discharge such duty, which is obligatory upon him. Shear & Redf. Neg. (5th ed.), sec. 194; Labatt's Master & Servant, secs. 566, 567; Missouri, K. & T. Ry. v. Hannig, 91 Texas, 350. Nor was it essential to defendant's liability that it should have reasonably anticipated that the defect in the roller would "probably cause plaintiff to be struck by the timber as he was." If the negligence of defendant in having a defective roller in that part of its machinery called the "live roller table" was calculated or likely to do some injury, it would not affect defendant's liability that the consequence of such act of negligence was something unforeseen and improbable, nor necessary that the injury in the precise form in which it occurred should have been foreseen. El Paso & N. W. Ry. v. McComus, 36 Texas Civ. App., 170; Hill v. Winsor, 117 Mass., 251; Texas & P. Ry. Co. v. Carlin, 60 L. R. A., 462; Atchison, T. & S. F. Ry. v. Parry (Kan.), 73 Pac. Rep., 105. That such negligence was reasonably calculated to inflict an injury in some manner, and of the same kind, was all the law required to make the defendant liable to plaintiff on account of the injury he sustained by reason of such negligence.

(6) Special charge No. 1, which is the basis of the tenth assignment, was properly refused. The effect of such charge is to make plaintiff's voluntarily leaving his position at the trip lever contributory negligence as a matter of law, whereas the question as to whether it was negligence was one of fact for the jury. Besides, it assumes that his only proper position at the time he was struck was at the trip lever, whereas the evidence shows, or reasonably tends to show, that he was at his place and in the discharge of his duty when he was struck by the timber, whether he was at the trip lever or not.

(7) The twelfth, thirteenth and fourteenth assignments of error are grouped in appellant's brief, and this proposition is asserted under them:

"When, over defendant's objections, evidence is submitted on an issue, which the court afterward determines is not sufficient to warrant such issue being submitted to the jury, the defendant is entitled, upon

request, to have the jury instructed affirmatively not to consider such evidence."

The first two of these assignments complain of the court's refusal to submit certain special charges requested by the defendant. By neither of such charges is the court requested to instruct the jury not to consider any of the evidence which was introduced. The other assignment complains of the court's permitting the plaintiff to introduce certain evidence, but the statement under the proposition does not show what the testimony was or that a bill of exception was reserved to its introduction. It is therefore apparent that the proposition is not germane to any one of these assignments, and if it were, that it could not be sustained under the last one. But if it could be considered we would be of the opinion that where a ground of negligence pleaded by the plaintiff for the recovery of damages was not submitted in its charge by the court to the jury, such evidence as was introduced by the plaintiff to sustain it was as effectually withdrawn from the jury's consideration as it would have been had the court expressly instructed the jury to disregard it.

(8) The fifteenth assignment of error is directed against the action of the court in refusing special charge No. 14 requested by defendant, which is as follows:

"If you believe from the evidence that there was a dead or inactive roller between where Bivens stood and the circular saw, and if you further believe that such roller being in that condition caused the injury to Bivens, then you are instructed that, under the evidence and the admission of the plaintiff himself, he knew the condition of said roller, and had known the same, and had observed its action with timbers, slabs and boards coming over it for several days prior to the injury; and you are further instructed that if you believe, from all the facts and circumstances in evidence before you, that Denny Bivens was in a position to understand, either from previous experience or from the experience of the past few days, the effect, if any, that the condition of said roller would have on the timber, boards and slabs coming down over the same, or if, by the exercise of reasonable care and prudence, he might have known and understood such conditions, then he assumed all risk resulting therefrom, and, although you may believe said roller was in the condition plaintiff says it was, and although you should believe that the condition of such roller did cause, either in whole or in part, the injury to Denny Bivens, yet defendant is not responsible therefor, and your verdict on this issue must be for defendant."

In connection with this assignment, we will say that the evidence shows that the plaintiff did know of the defect in the roller prior to the time he was injured, and had been told by someone about the mill that the position he was placed in to do his work was rendered dangerous in consequence of the dead roller; that upon being so told he went to his foreman about it, and the foreman then informed him that there was no danger at his place of work by reason of such dead roller, and instructed him to go back to work; that the danger from such defect in the roller was not apparent to him, and he relied upon the statement of his foreman that there was no danger, and went back to

work, in obedience to the order, believing up to the time of the accident that he was in no danger while at work at such place. There was no evidence tending to show that such a slab as broke was ever followed on the live roller table by such a large and heavy piece of timber as the one that broke it, at any time while plaintiff was working at defendant's mill. In short, there was no evidence showing that such conditions as caused the slab to break and injure plaintiff were ever present to him before. In view of this evidence the charge was properly refused. It, in connection with the other evidence, shows that the injury to plaintiff did not result from one of the ordinary risks of the employment which a servant of full age and experience may be presumed to know. But it was brought about during his service by the negligence of his master. It was incumbent on the defendant to show that the plaintiff voluntarily subjected himself to the risk of the danger from the dead roller with full knowledge and appreciation of such danger. Having been assured by his foreman that there was no danger on that account, and being directed by him to go back to his work, he had the right to rely upon the superior knowledge of his foreman, unless the danger from the broken roller was so patent that no one of ordinary experience and observation would have undertaken to continue in the work, despite such assurance of the foreman and his order. Tuckett v. American S. & H. Laundry, 84 Pac. Rep., 500; 4 L. R. A. (N. S.), 990; see case note on pp. 990 and 991 in this volume.

(8) The sixteenth assignment of error complains that the court erred in charging the jury that the burden of proof to establish the defense of contributory negligence and assumed risk was upon the defendant. We understand that such charge is an enunciation of the law in this State regarding the burden of proof as to each of such defenses.

(9) Our findings of fact dispose of the seventeenth assignment, under which it is insisted that the court erred in failing to instruct the jury to return a verdict for the defendant, adversely to appellant. There is no error in the judgment, and it is affirmed.

*Affirmed*

Writ of error refused