## PANAMA REFINING CO. v. CROUCH.

### No. 4990.

Court of Civil Appeals of Texas. Texarkana.
Nov. 5, 1936.

Rehearing Denied Nov. 19, 1936.

272

Lee, Porter & Latham, of Longview, and Thompson, Knight, Baker & Harris and Pinkney Grissom, all of Dallas, for appellant.

Jones & Jones, of Marshall, for appellee.

JOHNSON, Chief Justice.

This is an appeal by Panama Refining Company, a corporation, from a judgment rendered on findings of a jury against appellant and one M. Ulmer, defendants in the trial court, in favor of appellee, Leo Crouch, plaintiff in the trial court, assessing damages for personal injuries sustained by appellee on March 30, 1933, alleged to have been caused by negligence on the part of defendants while appellee was employed by them and engaged in the work of bending and fitting joints and portions of a pipe line being constructed by defendants at the time, in Gregg county, Tex.

The first contention raised is that the judgment of the trial court should be reversed because appellee failed to prove the corporate existence of appellant on March 30, 1933, the date on which appellee was injured.

Appellee's first amended original petition, on which he went to trial, alleges that defendants, M. Ulmer and the Panama Refining Company, a corporation duly incorporated, committed the acts of negligence on March 30, 1933, resulting in appellee's injuries. Appellant filed no sworn plea denying its corporate existence as alleged in plaintiff's petition. Appellant's contention is to the effect that the statutes requiring denial of its corporate existence to be under oath have reference only to its corporate existence at the time of the filing of the petition and answer in the suit, and that its unsworn general denial raised the issue requiring appellee to prove appellant's corporate existence on the date of the alleged negligence, in order to hold appellant liable therefor in its corporate capacity. And it is further contended that appellee did not, in evidence, discharge that burden of proof, but that, to the contrary, the testimony affirmatively shows that Panama Refining Company was a partnership and not incorporated on March 30, 1933, and therefore could not have been guilty of the negligence resulting in appellee's injuries. If an unverified general denial authorizes its consideration, there is testimony in the record tending to show that appellant was not incorporated when appellee received his injuries. W. W. Sanders testified in substance that he was bookkeeper for Panama Refining Company in March and April, 1933; that the business changed to a corporation in the early part of May, 1933; that the charter was issued earlier than that, but that it did not go into a corporation until later; and that it was being operated as a partnership in March, 1933.

Article 1999, R.S., provides: "An allegation that a corporation was duly incorporated shall be taken as true, unless denied by the affidavit of the adverse party, his agent or attorney, whether such corporation is a public or private corporation and however created."

Article 2010 provides:

"An answer setting up any of the following matters, unless the truth of the

pleadings appear of record, shall be verified by affidavit: * * *

"7. That the plaintiff or the defendant, alleged in the petition to be duly incorporated, is not duly incorporated as alleged."

It is apparent that the statutes intended to abolish the requirement of proving the charter or act of incorporation in cases where there was no real or bona fide dispute as to the corporate existence as alleged in the petition, and requiring of the adverse party desiring to raise such an issue to file his denial of such alleged corporate existence under oath. Very little, if any, of the intended purposes of the statutes would be accomplished by dispensing with the proof of the alleged corporate existence of defendant at the time of filing the petition and answer, as against an unsworn denial, if upon the same answer plaintiff is required to prove the alleged corporate existence of the defendant on a previous date, that on which the facts transpired giving rise to the suit. The language of the statute, "an allegation that a corporation was duly incorporated shall be taken as true, unless denied by the affidavit of the adverse party," is sufficiently broad to include the requisite of a sworn denial of corporate existence at any time "as alleged in the petition," and material to the suit or defense. We think it is the effect of the statutes that appellant's alleged corporate existence at the time of appellee's injuries, in the absence of a sworn denial thereof, is conclusively presumed. So, the contention to the effect that the testimony shows that the Panama Refining Company was unincorporated, therefore the corporation could not have been guilty of the negligence, cannot be urged for want of a sworn denial of its alleged corporate existence at that time. In other words, the testimony tending to show that appellant was unincorporated on March 30, 1933, is of no avail. This disposes of the first four points presented in appellant's brief.

By its propositions 5 to 8, inclusive, appellant complains that the verdict of the jury was excessive in amount. Appellant did not in its motion for new trial, nor otherwise in the trial court, complain of the amount of the verdict as being excessive. An assignment of error raising an issue for the first time in this court, on a matter or objection not presented to or passed upon by the trial court, and not presenting fundamental error, may not be urged as grounds for reversal of the judgment. Phillips Petroleum Co. v. Booles (Tex.Com.App.) 276 S.W. 667; Loden v. Carothers (Tex.Civ.App.) 85 S. W.(2d) 291; 3 Tex.Jur. 811, § 502. Appellant in its supplemental brief contends that it complained of the verdict as being excessive in amount in paragraphs 9 and 16 of its motion for new trial, reading:

"9. The Court erred in overruling this defendant's objections and exceptions to the submission by the court to the jury of Special Issue No. 7, for the following reasons, to-wit:

"a. There was no evidence as to what loss, if any, plaintiff would sustain in the future as a result of the injury.

"b. There was no competent evidence to support the submission of any issue on the nature and extent of plaintiff's injury and loss of future earning capacity.

"c. The charge as submitted enabled the jury to speculate on what future loss of earning, if any, plaintiff will sustain without submitting to the jury any criterion by which such damages, if any, should have been measured."

"16. The answer of the jury to Special Issue No. 7 of the Court's main charge submitted to the jury is unsupported by any competent testimony whatsoever, is contrary to the overwhelming preponderance of the evidence and constitutes rife speculation on the part of the jury, is not and could not be a measure of the damages sustained, if any, for the reason that the jury was permitted to delve into the realm of speculation and had no criterion by which to measure the damages."

Neither of the above paragraphs in appellant's motion for new trial complains of the verdict as being excessive in amount, and we do not think they are sufficient to support the filing of that particular complaint for the first time in this court.

The ninth proposition complains of the charge of the court on the measure of damages, in authorizing the jury to take into consideration plaintiff's loss, if any, of ability to labor and earn money in the future. It is contended there was no evidence of impairment of plaintiff's future earning ability, to authorize the

charge. Appellee testified that he was thirty-two years of age and for approximately twelve years preceding his injuries he had been employed as an oil field laborer, engaged in heavy manual labor, such as laying pipe line, and rig-building, earning an average of $2,000 per year; that he had never done any kind of work except physical labor and "had no education or preparation to be an office man." That his left leg was broken halfway between knee and ankle, pushing the bone out through the flesh. That a second operation had been necessary, putting in metal splints screwed to the bones to hold them together, which screws and splints had pulled away from the bone and were "sticking up there" at the time of the trial, April 2, 1935. That since he was hurt he had carried water and done light work for Mr. Ulmer on two occasions, for four days at one time and five days at the other, in August, 1934, and that he had to quit on account of his leg swelling to twice its normal size. Other than that he had not tried to get work, since he could not have held a job down; that he cannot stand on his leg much of the time; that he cannot stand on it any of the time without it hurting him. We think this testimony clearly shows that the charge complained of is not without support in the evidence. Dallas Consol. Elec. St. R. Co. v. Motwiller, 101 Tex. 515, 109 S.W. 918; Industrial Lbr. Co. v. Bivens, 47 Tex. Civ.App. 396, 105 S.W. 831, writ denied; St. Louis, S. F. & T. Ry. Co. v. Jenkins (Tex.Civ.App.) 137 S.W. 711, writ refused; Galveston, H. & S. A. Ry. Co. v. Miller (Tex.Civ.App.) 191 S.W. 374, 378, writ refused; St. L. S. W. Ry. Co. of Texas v. Garber, 51 Tex.Civ.App. 70, 111 S.W. 227, writ refused.

Under points 10 to 13, inclusive, appellant briefs the propositions that the court erred in refusing to peremptorily charge the jury to return a verdict in favor of appellant, because, it is contended, the undisputed evidence showed that M. Ulmer was an independent contractor and not an employee of appellant.

There is conflict in the testimony as to the terms of the agreement between appellant and Ulmer with respect to the work in which appellee was engaged as a laborer at the time of his injury. Mr. Tom Potter testified in substance that he was president of the Panama Refining Company and negotiated the agreement with Ulmer for his company, which was a verbal agreement, by the terms of which appellant was to furnish the pipe and the right of way; that Ulmer was to furnish the tools and labor, in the construction of a pipe line, from appellant's refinery, crossing a railroad track, to an oil well, a distance of approximately 2,000 feet, for which Ulmer was to receive ten cents per foot as a contract price for the line, except that crossing the railroad grade or dump; that for burrowing through and laying the pipe line under the railroad dump Ulmer was to receive "cost plus," didn't remember, but thought it was a cost plus 10 per cent.; that the pipe was to be buried twelve inches below ground surface, and the company had the right to inspect the pipe and the connection on the pipe and see that it was buried according to specification. Mr. Ulmer, by deposition taken before trial and introduced by plaintiff, testified as to the terms of the agreement between him and the Panama Refining Company, that he "was hired by the Panama Refining Company as a skilled man in laying pipe line, to superintend the men that did the work." That the company retained controlling authority over him and the right to direct the means and manner of doing the work; that he received for his services 10 cents per foot of pipe line constructed, except that part in crossing through the railroad dump, for which part of the work he was paid by the day, and at the rate of $20 per day; that the agents of the Panama Refining Company retained the right to tell him how to do the details of the work, to direct him of any certain way to lay, or bend, or cut a joint of pipe or anything like that, and to change the means and methods he was using in laying the pipe. Testifying for himself upon the trial, Ulmer contradicted some of his previous testimony. In the case of McElwrath v. Dixon (Tex. Civ.App.) 49 S.W.(2d) 995, 998, it is said: "The rule for distinguishing between the relation of employer and employee and employer and independent contractor has been variously expressed by our courts. The gist of such rule, however expressed, is the extent to which the employer exercises or has the right to exercise control over the conduct of the party and the mode and manner of doing the work which he is engaged to perform. King v. Galloway (Tex.Com.App.) 284 S.W. 942, 943, et seq., and authorities there

cited; Texas Employers' Ins. Ass'n v. Owen (Tex.Com.App.) 298 S.W. 542, 543, par. 1. Whether the relation in a given case is that of employer and employee; or employer and independent contractor, is usually, and *especially on conflicting evidence,* a question of fact to be determined by the court or jury trying the case. Tex. Employers' Ins. Ass'n v. Owen, supra, pages 542, 543 of 298 S.W., pars. 2 and 3; El Paso Laundry Co. v. Gonzales (Tex. Civ.App.) 36 S.W.(2d) 793, 795, par. 5; Dr. Pepper Bottling Co. v. Rainboldt (Tex. Civ.App.) 40 S.W.(2d) 827, 829, par. 1; J. W. Zempter Construction Co. v. Rodgers (Tex.Civ.App.) 45 S.W.(2d) 763, 766, par. 1."

The present case is not in point with the case of Lone Star Gas Co. v. Kelly (Tex.Com.App.) 46 S.W.(2d) 656, relied upon by appellant, wherein the evidence as to the contract in that case was undisputed and conclusively showed the relation of independent contractor. Nor is the testimony of this case in point of fact with the case of National Cash Register Co. v. Rider (Tex.Com.App.) 24 S.W.(2d) 28, wherein the witness testified to the conclusion that he was an employee of the National Cash Register Company, and upon cross-examination testified to facts showing that under the applicable rules of law his conclusion was erroneous. In the present case Ulmer testified to facts which, if true, would establish the relation of master and servant, and subsequently contradicted some of such facts. In such circumstances the conflict in his own testimony, as well as conflicting the testimony of Tom Potter, presented a matter for the jury.

Under its propositions 14 and 15, appellant briefs the contention that there was no evidence raising an issue of negligence against appellant in the matter of furnishing defective pipe, and that the evidence did not raise an issue of negligence on part of appellant in any particular.

In answer to issues submitted, the jury found that appellant was guilty of negligence in furnishing crystallized and defective pipes, and in failing to furnish some appliance of support or protection for the pipe at and about the joint where it broke. There is testimony in the record supporting each of these issues.

The judgment of the trial court is affirmed.