**TEXAS RECIPROCAL INS. ASS'N v. STADLER et al.**

No. 5370.

Court of Civil Appeals of Texas. Texarkana.

March 20, 1939.

Rehearing Denied March 23, 1939.

Rogers & Scott, of Waco, for appellant.

Frank R. Graves, of Fort Worth, for appellee.

WILLIAMS, Justice.

From a judgment awarding recovery of workman's compensation insurance in favor of Thomas W. Stadler, a surviving minor son, as beneficiary of L. E. Stadler, deceased, Texas Reciprocal Insurance Association, the insurance carrier, has appealed.

The deceased, a rig-builder, was killed while dismantling a wooden derrick on an oil leasehold estate then owned and operated by Joseph F. Anderson et al., the insured. Appellant answered the cross action of appellee with a general demurrer and denial, specially denied that the deceased was an employee of insured, and further pleaded that the deceased was an independent contractor at the time. The disposition of asserted claims of other parties named in the suit will not be noticed.

The trial court refused appellant's motion for instructed verdict. Upon the jury's finding of the wage scale and "that deceased was not an independent contractor" the court rendered judgment for appellee. We shall not take note of evidentiary issues answered by the jury for they are not controlling in the disposition of this appeal. The refusal of the court to grant a motion for an instructed verdict or to enter judgment non obstante veredicto involves the question whether the deceased was an employee or an independent contractor at the time he was fatally injured.

J. S. Brown, Superintendent of Development for insured, testified that he, acting for insured, made the trade with the deceased under which alleged oral contract the deceased was to furnish his own tools, labor and helpers, and to be paid $60 "when the job was completed." He further testified that he did not have anything to do with whom Stadler hired to help, the wages to be paid the helpers, the hours worked, or with any details of the work of tearing down the derrick. Hines, the Lease and Production Foreman of insured on this leasehold where the deceased received the

fatal injuries, testified that Brown introduced Stadler to him with the statement, "I am sending Mr. Stadler and a crew up early in the morning to tear down the derrick. I want you to work with them, show them where to stack the lumber and put the lumber to the best of your convenience on the lease, and let them use the company's tools, whatever they might need." According to this witness' testimony, it was his duty to flow the wells daily, to gauge the tanks, and when men were sent there to work, to oversee and okay the time they put in, and to do such other general routine work about the lease that might be necessary. The tools on the lease were in his charge. Stadler, Bridwell, and two others appeared for work as scheduled. Bridwell ran the cat-head truck, letting the lumber down. Hines worked with Stadler in pulling nails and stacking the lumber from the derrick. Pulling nails and stacking the lumber is a part of the work connected with tearing down a derrick. Hines worked with them all the first day. Stadler was killed early in the morning of the second day after these people had resumed work. Hines testified that the deceased had instructed "his men" to go to work, but that witness requested them to wait until witness could open a valve on the well and place timbers over it so as to protect the valve from falling lumber. Upon this request Stadler waited, and helped Hines to put the timbers around the valve. The remaining members proceeded to work the third day and completed the dismantling of the derrick. Hines okayed and signed the time-sheet showing their respective time and wages. This sheet was not introduced in evidence. According to Brown, the time-sheet was presented to him by Hines and contained the recitals of the time and wages due each man. Mrs. Stadler, the alleged surviving wife, was paid $12. Brown admits that he paid this $12, but claimed this sum was paid for the proportionate part of the work deceased had done. He further claimed that he made a new trade with the crew to go ahead and finish the job, and this time-sheet was made up under the new agreement.

In the case of McElwrath v. Dixon, Tex.Civ.App., 49 S.W.2d 995, 998, it is said: "The rule for distinguishing between the relation of employer and employee and employer and independent contractor has been variously expressed by our courts. The gist of such rule, however expressed, is the extent to which the employer exercises or has the right to exercise control over the conduct of the party and the mode and manner of doing the work which he is engaged to perform. King v. Galloway (Tex.Com.App.) 284 S.W. 942, 943, et seq., and authorities there cited; Texas Employers' Ins. Ass'n v. Owen (Tex. Com.App.) 298 S.W. 542, 543, par. 1. Whether the relation in a given case is that of employer and employee, or employer and independent contractor, is usually, and especially on conflicting evidence, a question of fact to be determined by the court or jury trying the case," citing cases. See also Panama Refining Co. v. Crouch, Tex. Civ.App., 98 S.W.2d 271.

We conclude that this record presented such a question of fact to be determined by the jury. From the details of the oral agreement related by Brown, the inference could be drawn that the deceased contracted to perform this work, using his own means and methods without submitting himself to insured's control in respect to all its details. And, likewise, from the instructions given by Brown to the foreman to work with them, to show them where to stack the lumber, and to furnish the tools needed, the inference could be drawn that the insured had retained the power of control in directing the means and details of its accomplishment. The latter inference is further supported by the fact that Hines did work with them, directed the placement of the lumber and the protection of the valves on the well. Outside of this, the record is silent as to who directed the details of the work. It is observed that this record is silent as to who actually employed the men who assisted Stadler; does not disclose whether Stadler or insured furnished the cat-head truck, or any other tools needed or that were used on the job. The fact Mrs. Stadler was paid $12 was also an item to be considered in passing upon this question.

Mrs. Stadler, over objections of appellant, testified as follows:

"Q. Is it not a fact that your husband was in the employ of Anderson et al.? A. Yes.

"Q. How long had your husband been working for James F. Anderson at the time of his death? A. He had started his second day.

"Q. Did you know what wages he was receiving from Anderson at the time he was hurt? A. $12 a day.

"Q. Were you paid the $12 a day after his death? A. Yes.

"Q. Are you not the widow of L. E. Stadler who was accidentally killed while in the employ of Anderson on March 24, and on account of whose death claim for compensation was made before the Industrial Board in Cause No. C-10315? A. Yes, and my husband was so employed and claim was submitted."

The above series of questions and answers have been grouped for the sake of brevity and to present more clearly the validity of the objections urged. This lady did not claim to be present and hear the terms of any trade made by her alleged husband with any representative of insured. Her answers to these questions were based upon hearsay, although the testimony does not reveal from what source she obtained information upon which she based her opinion and conclusion. The questions were leading, suggestive, and called for an opinion and conclusion. From the inference deductible from the evidence heretofore detailed, this record presented a question of fact for the jury to determine whether the deceased was an employee or an independent contractor. Instead of this lady giving testimony as to facts within her knowledge which had a bearing upon this question, she gave her opinion and conclusion, and this based upon hearsay. This testimony invaded the province of the jury. Under this record this testimony was inadmissible and prejudicial.

The conversations witness Hines had with Brown, the superintendent, heretofore detailed, and the instructions given by Brown to Hines were admissible in evidence. The insured here, as often is the situation, acted through the ears and mouth of a superintendent in charge of the project. Besides, appellant sought to prove the alleged contract by this superintendent.

The testimony given by Hines as to his okay of the payroll, heretofore detailed, was admissible. He was in charge of the leasehold. That it was his duty to keep the time put in by workmen and to okay the time-sheet for his superiors to act on was not disputed.

We pretermit discussion of any other alleged error advanced as they are not likely to occur on another trial.

For the error indicated above, the judgment is reversed and the case is remanded.