### TEXAS RECIPROCAL INSURANCE ASSOCIATION V. THOMAS WILBURN STADLER.

No. 7955. Decided November 11, 1942.
Rehearing overruled December 9, 1942.
(166 S. W., 2d Series, 121.)

*Stinchcomb, Kenley & Sharp,* of Longview, and *Scott & Wilson, of Waco,* for petitioners.

It was error for the Court of Civil Appeals to hold that the statement contained in the compromise settlement agreement filed with the Industrial Accident Board (in another claim) was admissible as a declaration against interest made by the insurance carrier. Texas Emp. Ins. Assn. v. Sewell, 32 S. W. (2d) 262; Republic Underwriters v. Greenhaw, 114 S. W. (2d) 362; Myers v. Crenshaw, 137 S. W. (2d) 7; 45 Tex. Jur., 822.

*Graves & Collins,* of Fort Worth, for respondent.

On the question of the admissibility of the declarations made in the compromise settlement. Thornell v. Missouri State Life Ins. Co., 249 S. W. 203; Barrett v. Featherston, 35 S. W. 11; Wichita Falls Ry. Co. v. Pepper, 134 Texas 360, 135 S. W. (2d) 79.

MR. JUDGE SLATTON delivered the opinion of the Commission of Appeals, Section B.

The suit for workmen's compensation was brought by the minor son of the deceased employee against Texas Reciprocal Insurance Association. A jury verdict was in favor of said minor son. The insurance carrier filed a motion for judgment notwithstanding the verdict and judgment was rendered against the son and in favor of the insurance carrier. On appeal the Court of Civil Appeals at Fort Worth reversed the judgment of the trial court and remanded the cause. (The opinion of the Court of Civil Appeals was not published under the provisions of Rule 452.)

The insurance carrier contends that the evidence shows without dispute the relationship of independent contractor existed between the deceased and the employer at the time of the injury. The evidence indisputably shows that L. E. Stadler, deceased, was working for Joseph F. Anderson et al at the time he received an accidental injury which resulted in death. There is in evidence the leger sheet kept by the employer which shows the name of L. E. Stadler and that he had worked one day on the 23rd day of March, 1932, at the rate of $12.00 per day. The lease foreman of the employer testified that after the death of L. E. Stadler, which occurred shortly after the beginning of the second day of Stadler's employment, a time sheet was made on which the crew was listed and the amount of pay due each was shown and that such time sheet included the name of L. E. Stadler for a period of one day at $12.00 per day. The checks issued to the crew by the employer used in dismantling the derrick, were introduced in evidence, including the checks payable to Mrs. L. E. Stadler in the amount of $10.00. The bookkeeper of the employer testified that in April, 1932, the employer paid to the insurance carrier the sum of $98.82, which sum represented the premium for compensation insurance for all the employees of Joseph F. Anderson et al, and included the amount paid to Mrs. L. E. Stadler for the one day's labor performed by the deceased L. E. (Jack) Stadler in computing the premium paid. There is evidence tending to show that the control of the details of the work was in a salaried employee of Joseph F. Anderson et al.

The insurance carrier offered in evidence a part of the deposition given by J. S. Brown, the party who made the contract with L. E. Stadler to dismantle the derrick, and who testified to facts which established the relationship of independent contractor between Stadler and the employer, if such facts were found to be true. The beneficiary offered a part of the deposition given by the witness Brown as follows:

"11. Isn't it a fact that you stated to me on that occasion in the presence of W. J. R. King that Jack Stadler was an employee and that he was on the payroll for $12.00 per day?

"Answer: Yes.

"Isn't it a fact that you and he then agreed that you would employ him as foreman and that he would get up a crew of men for you and that all of them would be placed on the payroll of Joseph F. Anderson & Company so that they would be

protected by the compensation insurance carried by Joseph F. Anderson & Company?

"Answer: No.

"Please state fully the conversation between you and Jack Stadler on the subject of compensation insurance for that job and state as near as you can remember the language used by each of you in that conversation.

"Answer: Well, Jack mentioned the fact that he did not have compensation insurance but I do not recall any statement by me that we would put those men on our payroll because we had nothing to do with who he hired or anything like that and I know there was never any agreement that we would set these men up by working so many days and charge their time to Joseph F. Anderson. There was nothing like that, although we did know Jack didn't have compensation and I remember at the time Jack said 'Nothing will happen; these men are old experienced men on the job and it will be all right'."

The witness King testified to the following:

"Did you have any conversation with Jack Brown with reference to the subject matter of this suit?

"Answer: Yes.

"Did you ever discuss with Jack Brown what his testimony would be with reference to whether or not Jack Borwn had employed Jack Stadler for Joseph F. Anderson et al and if so, will you please state in detail as best you can remember the time and the place where you had such conversation and state fully what Jack Brown told you with reference to the employment of Jack Stadler.

"Answer: Yes, on several occasions, in my office and out on the Golf Course at the Gladewater Country Club, I discussed the employment of Jack Stadler with J. S. Brown. I do not remember the dates as during the period prior to any hearing on the matter after I was employed, I saw Brown often and was with him on many occasions, both in town and on the golf course. Brown stated in my office and on several other occassions before I ever saw him in the courthouse on this case that he employed L. E. (Jack) Stadler to tear down the derrick on Foshee property. He said that Stadler was broke and wanting work and to tear down the derrick; that Stadler could

get some fellows to help him and that he and Stadler figured where it would not cost Brown or his company over the neighborhood of $60.00. * * *

"and that all Stadler wanted was his wages of $12.00 per day and they figured it would require three or four men about a day and a half to tear the derrick down. After delaying and being hit up again by Stadler for the work, Brown stated that he finally told Stadler to go get the other fellows and be up there the morning they went to work. * * * Brown replied that they would be carried on his pay roll and under his insurance and that they could use the tools upon the lease and Mr. Hines, Brown's lease man would work with them, help them pull nails and show them where to stack the lumber. * * * Brown assured me he would testify to the above facts.

"Did you hear Frank R. Graves, the attorney for Thomas Wilburn Stadler, have an interview with Jack Brown just outside the court room and just a few minutes before Jack Brown was offered as a witness?

"I recall only a part of the interviews. I heard Jack Brown state that he employed Jack Stadler and that he was on Anderson's payroll at $12.00 per day."

The witness Graves testified in part as follows:

"In January, 1935, this case was set for trial for January 15 and at that time there were two cases pending that had been consolidated. * * * On the morning the cases were called for trial in this court room Mr. King introduced me to Mr. Brown and he and I questioned Mr. Brown. I had a conversation with Mr. Brown there and questioned him about the employment of Jack Stadler. He stated to me he was superintendent for Joseph F. Anderson et al and that he had employed Jack Stadler to tear down that derrick and agreed to pay him $12.00 per day and that Jack Stadler told him he wanted wages and that the job wouldn't cost more than about $60.00 to dismantle that wooden derrick and that he employed him and put him on the payroll. Then a few minutes later I called Mr. Brown as a witness in this court room and placed him on the stand here to testify and he did testify that he had employed Jack Stadler for a turn key job of $60.00 and I then plead surprise and stated to the court in Mr. Brown's presence

that I was surprised at his testimony and asked leave to withdraw my announcement of ready and continue the case."

■ Our statement above does not contain all of the evidence in the record with respect to the relationship existing between Stadler and the employer at the time of the injury. However, enough of the evidence is quoted to properly understand our rulings to be made in the case. We are of the opinion that under the evidence the relationship existing between Stadler and the employer at the time of the injury may be found to be either that of employer and employee or employer and independent contractor. In such a case, a submission of the issue to the jury is required. Southern Underwriters v. Samanie, 137 Texas 531, 155 S. W. (2d) 359. The same holding was made by the Court of Civil Appeals at Texarkana on the first appeal of this case. 126 S. W. (2d) 706. The insurance company re'ies upon the case of Dennis v. Texas Employers Ins. Ass'n., 116 S. W. (2d) 492, and many other cases in which the courts have held that the evidence showed the relationship of employer and independent contractor as a matter of law. The important test applied in these cases is the right of control of the person employed by the employer with respect to the details of the work to be performed. Where, as in this case, the evidence is in conflict with regard to the right of control, a jury issue is presented. Where the evidence is without dispute that such control is to be exercised by the one employed to do the work, the independence of the contract is established as a matter of law. Here lies the distinction to be made in the cases relied on by the insurance carrier.

■ The respondent introduced in evidence a part of the deposition, quoted above, given by the witness, J. S. Brown. The petitioner claims that such evidence shows as a matter of law the independence of the contract between Stadler and the employer and that respondent is irrebutably bound by it. The same contention was made in the trial court. When the respondent offered evidence by deposition and oral testimony which tended to impeach the evidence given by the deposition of the witness J. S. Brown the insurance company objected to the impeaching testimony, which objection was sustained by the trial court. Thereupon respondent explained to the trial court that the cross interrogatories of the witness J. S. Brown were introduced in evidence by the respondent for the purpose of laying a predicate to impeach said witness Brown. The trial court

allowed the impeaching evidence to be received and overruled the insurance carrier's objection to such evidence. No complaint has been made to such ruling by the insurance company. Under the circumstances stated, we are of the opinion that the respondent is not concluded by the cross interrogatories given in the deposition of the witness J. S. Brown. Any other rule would render impossible the laying of a predicate by cross interrogatories for the purpose of impeaching a witness who testified by deposition. We conclude that the trial court erroneously granted the insurance company's motion for a judgment notwithstanding the verdict.

■ We agree with the Court of Civil Appeals that the burden of proof was erroneously placed upon the insurance carrier in special issue No. 5. Nobles v. Texas Indemnity Ins. Co. (Com. App.) 12 S. W. (2d) 199. The submitted issue is:

"Do you find from a preponderance of the evidence that L. E. (Jack) Stadler on March 24, 1932, was working for Joseph F. Anderson et al as an independent contractor?"

The insurance carrier objected to the submission of the quoted special issue for the reason stated and cross assigned error in the Court of Civil Appeals. This trial error destroys the jury verdict and necessitates a new trial on remand rather than an entry of judgment nunc pro tunc on the verdict. McAfee et al v. Travis Gas Co., 137 Texas 314, 153 S. W. (2d) 442.

■ Since the cause is remanded, and must be retried, we shall notice the complaint of the insurance company to the ruling of the Court of Civil Appeals with respect to the admissibility of a statement which was contained in a compromise settlement agreement executed by Mrs. Epsie Elizabeth Stadler and W. G. Godwin, adjuster for the Texas Reciprocal Insurance Association, which we assume, was filed with and approved by the Industrial Accident Board. The statement is as follows:

"A. That the deceased L. E. Stadler worked for or was in the employ of Joseph F. Anderson et al one day and approximately one hour when he sustained injuries resulting in death and that the wages of the deceased L. E. Stadler was $10.00 per day during his one day's employment."

This proffered evidence was executed by the trial court upon the objection of the insurance company. There is no

question raised as to the adjuster's authority to act. Therefore, in passing upon the admissibility of the proffered evidence we are assuming, without deciding, that the adjuster for the insurance company had authority to act for the company and that the matter of making the agreement out of which the statement is taken was within the scope of said adjuster's authority. 26 C. J. pp. 413-414, Sec. 533. The statement sought to be introduced in evidence must be construed to mean that deceased was an independent contractor (worked for) or was in the employ of Joseph F. Anderson et al either of which statements amounts to an opinion or conclusion of law. In 31 C. J. S. p. 1026, section 272b it is said: "As a general rule statements or admissions relating to a question of law * * * are not admissible in evidence * * *." The same rule was announced in the case of Texas Employers Ins. Ass'n. v. Sewell, 32 S. W. (2d) 262 (wr. ref.). The important issue of law to be determined in the present case is whether under the facts in evidence the relationship between the deceased and the employer is one of employer and employee or independent contractor and employer. It is the province of the witness to relate the facts within his knowledge relevant to the issue being tried. It is the duty of the court to declare the law applicable to such facts. It is not permissible for a witness to testify to a legal conclusion from facts given either by himself or other witnesses. Brown v. Mitchell, 88 Texas 350-357, 31 S. W. 621, 36 L. R. A. 64; Berger v. Kirby, 105 Texas 611-615, 153 S. W. 1130, 51 L. R. A. N. S. 182. There can be no distinction with respect to admissibility between a statement offered as an admission and the same statement offered as a part of the testimony of a witness on the stand. 31 C. J. S. p. 1026, section 272b. Where a party has used a document made by a third party in such way as amounts to an approval of its contents, such statement may be received against him as an admission by adoption. Thornell v. Missouri State Life Ins. Co., 249 S. W. 203 (Com. App. Sec. B).

Whether a part of the statement "that the wages of deceased were $10.00 per day during his one day's employment" is admissible if offered alone as an admission against interest under the rule announced in the Thornell case need not be determined for the reason that no such offer was made. The rule is settled that where evidence is offered as a whole, some of which is inadmissible, it is not error for the trial court to exclude the whole upon proper objection. Robinson v. Stuart, 73 Texas 267, 11 S. W. 275.

The judgment of the Court of Civil Appeals which reversed the judgment of the trial court and remanded the cause for another trial is affirmed.

Opinion adopted by the Supreme Court November 11, 1942.

Rehearing overruled December 9, 1942.