OSCAR H. WEBER, *Respondent,* v. WEST SEATTLE LAND
& IMPROVEMENT COMPANY, *Appellant.*[1]

[1]Reported in 63 P. (2d) 418.

*Wright, Jones & Bronson* and *Story Birdseye,* for appellant.

*Hyland, Elvidge & Alvord,* for respondent.

TOLMAN, J.—This is an appeal by the defendant in an action for conversion, from a judgment against it. The case was tried to a jury.

Appellant seems to raise the following principal questions: (1) Was the title to the property involved in the respondent at the time when it was converted; and, if not, can the respondent maintain this action as the assignee of the cause of action for conversion? (2) Did the trial court err in the admission and rejection of testimony bearing upon the question of the value of the property converted?

The question of whether or not there was a conversion was hotly contested below, the appellant maintaining that it had absolute title to the property at that time, but it now seems to be conceded that the verdict of the jury was final upon that question.

The facts necessary to an understanding of the questions to be discussed may be briefly stated as follows: Some years ago, the appellant leased a certain tract of real estate for a term of years, upon which the lessees, or their successor, erected certain buildings and installed certain equipment. The Seattle Park Company, a corporation, succeeded to the rights of the original lessees and carried on upon the leased premises a business known as the Luna Park Natatorium. The buildings were destroyed by fire in April, 1931, but the equipment and machinery, together with considerable lumber, were salvaged and left upon the premises.

The respondent had acquired a controlling interest in the Seattle Park Company prior to the fire, and

thereafter he carried on extensive negotiations with the appellant respecting the adjustment of the fire loss, the collection of the insurance thereon, the disposition of the insurance money, the cancellation of the existing lease, and the possibility of the execution of a new lease either to the Park Company or to himself, individually. The ownership of the salvage was also probably in dispute. At any rate, each side, at the time of the trial, claimed absolute ownership of the salvage at all times. These negotiations culminated in the execution of a written instrument in August, 1931, in which the appellant is described as the first party, the respondent as the second party, and the Seattle Park Company as the third party. By the terms of this instrument, the leases were cancelled and all rights and liabilities thereunder were extinguished.

Respondent, as the managing officer and principal stockholder of the Seattle Park Company, seems to have cared for the salvaged property after the fire, to have placed a watchman in charge of it, and to have asserted the title to be in the Seattle Park Company at all times. For a time, at least, he seems to have anticipated that he could obtain a new lease. Matters so continued until December 30, 1933. On that day, while the respondent was removing certain of the salvaged property, he was ordered off of the premises by a representative of the appellant and threatened with arrest if he removed any of the property. On January 3rd following, the respondent caused the Seattle Park Company to duly execute and deliver to him a bill of sale which conveyed to him all of the salvaged property

". . . together with any causes of action or claims it now has or ever had against the West Seattle Land & Improvement Company, a corporation, for the conversion of said personal property."

Thereupon, and on the same day, the respondent verified his complaint in this action in which he described himself as the owner of the property alleged to have been converted on December 30, 1933.

The answer and cross-complaint of the appellant denies ownership in the respondent, denies the conversion, pleads title in the appellant to all of the property, and alleges the conversion of a part of it by the respondent, for which it asks a recovery.

On these issues, the case proceeded to trial. During the course of the examination of the respondent as a witness, and early in the trial, the bill of sale from the Seattle Park Company to him, from which we have hereinbefore quoted, was admitted in evidence without objection. The question now presented was not in any manner presented to the trial court until the close of plaintiff's case, and then, for the first time, the plaintiff's lack of title to the property at the time the conversion was claimed to have taken place was, among other things, urged in support of a motion for nonsuit.

It does not appear that any reason was then advanced indicating that the appellant would be in the least prejudiced by an amendment of the complaint to conform to the proof. Nor did the appellant ask leave to amend its answer so as to present any additional defense which might be appropriate.

It is now urged that, had respondent sued as the assignee of the cause of action, the appellant might have pleaded as an offset that the Seattle Park Company was indebted to it in a substantial sum. The answer to that contention seems to be twofold. First, such a plea of offset would have been an admission of title in the Seattle Park Company. and would have been inconsistent with appellant's plea of title in itself, at least so far as (if the plea of offset was allowed) to

impair or defeat its claim of title upon which it based a vigorous defense; and second, the appellant did not ask of the trial court leave to plead an offset or to amend its pleadings in any manner. Hence, having failed to ask for such a ruling, there is nothing in that respect for this court to review.

Under the strict rules of common law pleading, no doubt one might not in an action for conversion sue as owner and recover as the assignee of the owner. Our statute requires the action to be brought in the name of the real party in interest, and under our liberal rules of pleading the complaint must be considered amended to show that respondent sued as assignee of the cause of action. In substance, the situation here is the same as that considered by this court in *Kohout v. Brooks,* 185 Wash. 4, 52 P. (2d) 905. There was no error in denying the motion for nonsuit.

■ The respondent, having testified that he was the president, secretary and treasurer of the corporation which owned the property at the time of the conversion, and that he was also the owner of a majority of its capital stock, was, without further qualification and over objection, permitted to give his opinion of the value of the property.

It is settled law in this state that the owner of property may testify as to its value upon the assumption or presumption that he is so far familiar with the property and its uses as to know its worth. *Wicklund v. Allraum,* 122 Wash. 546, 211 Pac. 760, and cases there cited.

If this be the rule as to one private owner, it must likewise be the rule as to all private owners. A corporation can give testimony only through an officer or agent, and if an individual owner may testify, then the one particular individual who controls and manages

the corporation must, of necessity, be permitted to testify in order that the rule may be general and uniform in its application. In spite of some authorities from other states which seem to look in the other direction, we think that equality and uniformity require the holding that respondent's testimony was admissible.

■ But, in any event, the respondent became the owner by bill of sale on January 3, 1934, or four days after the conversion. He could then have either sued in replevin to recover the possession of the property or could have elected, as he did, to sue for its value. So that his testimony as to the value as of January 3, 1934, when he might have claimed as owner, is not so far removed in time from the day of conversion or so separated from the ownership, because of the previous conversion, as to make the testimony of no probative force.

Appellant itself took advantage of the same ruling, and its managing officer, who never did own the property, gave his opinion as to its value. We conclude that there was no prejudicial error in the ruling.

■ After the conversion, and on January 30, 1934, the appellant sold the personal property here involved (as it contends) for four hundred dollars cash. Testimony as to such a sale was offered and refused. An offer of proof was then made embodying the pertinent facts and that the sale was a bona fide one in which the fair and reasonable value of the property was realized. This offer was rejected.

The rule is well established that actual sales may be shown for the purpose of establishing market value. *Hershey v. Hanauer,* 108 Wash. 498, 185 Pac. 627. But that is far from holding that the wrongdoer may dispose of goods he has converted at any price he sees fit and then use that price to reduce the amount of the recovery by the true owner. A case directly in point is

*Fredenburg v. Horn,* 108 Ore. 672, 218 Pac. 939, 30 A. L. R. 1153, where it is said:

"Another alleged error was the refusal of the court to permit evidence by defendants of what part of the property sold for and what disposition was made of the money. We do not see how this could be material. The plaintiff's loss would be neither greater nor less by reason of the price which defendants received. The rule in cases of this character is that the wrongdoer must pay the reasonable market value of the property converted, and that is not to be estimated by the price for which it was sold. If such were the case it would encourage trespass upon personal property and sales at small value, which is against the policy of the law."

See, also, *Groves v. Warren,* 233 N. Y. 160, 135 N. E. 230, and *Morgan Lake Co. v. New York, N. H. & H. R. Co.,* 262 N. Y. 234, 186 N. E. 685.

There was no error in rejecting the offer.

Finding no prejudicial error, the judgment is affirmed.

MILLARD, C. J., HOLCOMB, MITCHELL, and BEALS, JJ., concur.