REID ROAD MUNICIPAL UTILITY
DISTRICT NO. 2, Petitioner,

v.

SPEEDY STOP FOOD STORES,
LTD., Respondent.

No. 09–0396.

Supreme Court of Texas.

Argued Oct. 12, 2010.

Decided March 11, 2011.

Rehearing Denied June 10, 2011.

J. Mark Breeding, C. Charles Dippel, Mark Lynn Merrell, Andrews Kurth LLP, Houston, TX, for Petitioner.

Bill W. Russell, Bill W. Russell, P.C., Victoria, TX, for Respondent.

Justice JOHNSON delivered the opinion of the Court.

In this case we address two evidentiary questions. The first is whether an employee of the corporate general partner of

a limited partnership qualifies to testify about the fair market value of partnership property under either the Property Owner Rule or Texas Rule of Evidence 701. The second is whether the condemning authority in a condemnation proceeding adopted the damages opinion of an appraiser by presenting the appraiser's testimony and written appraisal in the special commissioners' hearing.

Under the record before us, we answer the first question "No," the second question "Yes," and affirm the judgment of the court of appeals.

## I. Background

Speedy Stop Food Stores, Ltd. is a Texas limited partnership that owns and operates convenience stores in Texas. Reid Road Municipal Utility District sought to acquire a waterline easement across land in Harris County owned by Speedy Stop (the Property).[1] The District and Speedy Stop were unable to agree on compensation for the easement, so the District initiated condemnation proceedings. *See* Tex. Prop.Code § 21.012(a). At the special commissioners' hearing the District introduced testimony of, and a written appraisal by, David Ambrose. Ambrose, a state-certified appraiser, evaluated Speedy Stop's damages at $9,342. Speedy Stop did not appear at the hearing so Ambrose's testimony and appraisal were the only evidence presented. The commissioners awarded Speedy Stop $9,342.

Speedy Stop timely objected to the commissioners' award, transforming the matter from an administrative proceeding to a civil suit. *See id.* § 21.018(b); *Denton County v. Brammer*, 361 S.W.2d 198, 200 (Tex.1962). The trial court granted partial summary judgment in favor of the District on the taking predicates, leaving the amount of compensation as the only contested issue. After the deadline to designate experts passed without Speedy Stop having designated a damages expert, the District filed a motion for summary judgment as to damages pursuant to Texas Rule of Civil Procedure 166a(i). *See* Tex.R. Civ. P. 166a(i).

In response to the District's motion, Speedy Stop filed the affidavit of Carlton LaBeff. LaBeff is the vice president of C.L. Thomas, Inc., the corporate general partner of Speedy Stop. Speedy Stop timely identified LaBeff as a person with knowledge of relevant facts but did not designate him as an expert. In his affidavit LaBeff averred, among other matters, that he (1) had been involved with the acquisition and sale of all Speedy Stop convenience stores since 1982; (2) "for several years" had been in charge of all real estate acquisitions and sales for Speedy Stop; (3) was responsible for dealing with easement issues at all Speedy Stop convenience stores and fast food restaurants; (4) maintained familiarity with realty values in Harris County through various means in order to fulfill his job duties; (5) was aware of how a utility easement can affect the value of commercial property such as the tract at issue; and (6) was "making this affidavit on behalf of the owner, as the owner's representative and as the owner." In the affidavit, LaBeff did not set out facts showing that he had personal knowledge of the Property, nor did he say that he had personal knowledge of or familiarity with it. LaBeff did not give an opinion of the Property's value before or after the easement was taken. Instead, he set out his conclusion that the easement reduced the fair market value of the Property by $62,000.

---

1. Chevron USA, Inc., was initially named as a party to the proceedings, but was dismissed after it filed a disclaimer of interest in the Property.

In its written response to the motion for summary judgment, Speedy Stop attached Ambrose's written appraisal and a transcript of his testimony before the commissioners to LaBeff's affidavit, claiming that Ambrose's appraisal and testimony were admissions by the District. The District objected to LaBeff's affidavit and Ambrose's appraisal and testimony. As to LaBeff's affidavit the District argued that: (1) the time for designating experts had expired and Speedy Stop had not designated LaBeff as an expert witness; (2) LaBeff was not qualified to render an opinion on the property's value because he was not a licensed real-estate appraiser; and (3) LaBeff's methodology did not satisfy the reliability requirement for valuing the easement. The District argued that Ambrose's appraisal and testimony were not admissible because: (1) testimony at an administrative hearing is not admissible as proof of facts in the de novo trial proceeding; (2) Ambrose was not designated as an expert; and (3) Ambrose's testimony was hearsay and not an admission by the District because he was not an agent of the District.

The trial court sustained the District's objections to both LaBeff's affidavit and Ambrose's testimony and appraisal. It then granted the District's motion for summary judgment and entered judgment awarding Speedy Stop damages of one dollar. *See State v. Jackson*, 388 S.W.2d 924, 926 (Tex.1965) (holding that because the property owner adduced no evidence relating to the issue of value in the condemnation proceeding, "the trial court was necessarily constrained to instruct the jury to return a verdict for nominal damages").

The court of appeals reversed, holding that the Property Owner Rule applies to corporate entities. 282 S.W.3d 652, 657–58. Applying the Property Owner Rule, the court of appeals held that LaBeff was

a designated agent familiar with the market value of the Property and the trial court abused its discretion by striking his affidavit. The court of appeals did not reach Speedy Stop's assertion that Ambrose's opinion and appraisal constituted an admission by the District as to damages. We granted the District's petition for review. 53 Tex.Sup.Ct.J. 569 (April 12, 2010).

■■■ We agree with Speedy Stop in part as to the Property Owner Rule, and in whole as to its contention that Ambrose's testimony and appraisal constitute an admission by the District. As to LaBeff's damages opinion, we believe the better rule is to treat organizations the same as natural persons for purposes of the Property Owner Rule, with certain restrictions on whose testimony can be considered as that of the property owner. We hold that the Property Owner Rule is limited to those witnesses who are officers of the entity in managerial positions with duties related to the property, or employees of the entity with substantially equivalent positions and duties. Further, the Property Owner Rule falls within the ambit of Texas Rule of Evidence 701 and therefore does not relieve the owner of the requirement that a witness must be personally familiar with the property and its fair market value, but the Property Owner Rule creates a presumption as to both.

LaBeff, however, was not an employee or officer of Speedy Stop. Nor did his affidavit set out facts showing he was personally familiar with the Property and its value and that his opinion was not substantively an expert opinion based on specialized knowledge, skill, experience, training, or education. Thus, the trial court did not abuse its discretion by excluding his opinion as to the Property's diminution in value. On the other hand, the District's actions before the special commissioners

evidenced its belief in the truth of Ambrose's opinion and appraisal as to Speedy Stop's damages. Thus, Ambrose's damages opinion and his appraisal were admissible as adoptive admissions by the District under Texas Rule of Evidence 801(e)(2)(B) and they were some evidence of Speedy Stop's damages.

## II. Analysis

### A. LaBeff's Affidavit

The District asserts that the trial court properly excluded LaBeff's affidavit and the court of appeals erred by holding that it was admissible under the Property Owner Rule. The District urges that corporate employees cannot be treated as "owners" for purposes of testifying about the value of corporate property, and even if they can be, LaBeff was not an employee of the Property's owner. The District also argues that allowing everyone familiar with property to testify to its value under Texas Rule of Evidence 701 will negate the protections provided by rules and procedures requiring timely disclosure of experts and their opinions.

Speedy Stop first argues that regardless of the Property Owner Rule, LaBeff's affidavit was improperly excluded because Rule 701 allows admission of his testimony. It next argues that the court of appeals was correct: LaBeff's affidavit was improperly excluded because he was designated as an agent for the owner of the Property and his affidavit was admissible because of the Property Owner Rule.

We agree with the District that the trial court did not abuse its discretion by excluding LaBeff's affidavit. We first address the issue of whether LaBeff's affidavit was admissible under Rule 701 even though he was not designated as an expert witness.

### 1. Rules 701 and 702

Rule 702 states:

If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise.

Tex.R. Evid. 702. In contrast, Rule 701 provides:

If the witness is not testifying as an expert, the witness' testimony in the form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based on the perception of the witness and (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue.

Tex.R. Evid. 701. We will discuss each rule in turn.

### a. Rule 702

■ For purposes of Rule 702, a witness is testifying as an expert witness when the witness's testimony, in substance, is based on special knowledge, skill, experience, training, or education in a particular subject. *See, e.g., Seale v. Winn Exploration Co., Inc.,* 732 S.W.2d 667, 669 (Tex.App.-Corpus Christi 1987, writ denied); *Perry v. Tex. Mun. Power Agency,* 667 S.W.2d 259, 264 (Tex.App.-Houston [1st Dist.] 1984, writ ref'd n.r.e.); *Montgomery Ward & Co. v. Levy,* 136 S.W.2d 663, 669 (Tex.Civ.App.-Fort Worth 1940, writ dism'd).

But not all witnesses who are experts necessarily testify as experts. A witness may have special knowledge, skill, experience, training, or education in a particular subject, but testify only to matters based on personal perception and opinions. *See generally* John F. Sutton, Jr. & Cathleen C. Herasimchuk, *Article VII: Opinions*

*and Expert Testimony*, 30 Hous. L.Rev. 797, 826–27 (1993) (explaining that "[a] witness with specialized training or experience is not limited to giving opinion testimony as a Rule 702 'expert'" and that "[i]f his opinion rests on firsthand knowledge ... then testimony under Rule 701 is also permissible"). If so, the witness's testimony is not expert testimony for purposes of Rule 702, and the witness need not be designated or identified as such. *See id.* at 827 (noting that a witness's "potential qualifications as an expert did not prevent him from testifying within the narrower confines of Rule 701"). But generally a witness testifying to the fair market value of property—even a hired expert with no knowledge of the property apart from that gained because of the controversy involved in the litigation—will be testifying based on some degree of familiarity with the property. If the witness has been hired as an expert, the familiarity will most frequently have been gained during the process of formulating the witness's opinion.

The line between who is a Rule 702 expert witness and who is a Rule 701 witness is not always bright. But when the main substance of the witness's testimony is based on application of the witness's specialized knowledge, skill, experience, training, or education to his familiarity with the property, then the testimony will generally be expert testimony within the scope of Rule 702.[2] A witness giving such testimony must be properly disclosed and designated as an expert and the witness's testimony is subject to scrutiny under rules regarding experts and expert opinion. *See Seale*, 732 S.W.2d at 669; *Perry*, 667 S.W.2d at 264; *see also Asplundh Mfg. Div. v. Benton Harbor Eng'g*, 57 F.3d 1190 (3d Cir.1995). Any other principle would allow parties to conceal expert testimony by claiming the witness is one whose opinions are merely for the purpose of explaining the witness's perceptions and testimony. *See generally* Gregory P. Joseph, *Emerging Expert Issues Under the 1993 Disclosure Amendments to the Federal Rules of Civil Procedure*, 164 F.R.D. 97, 108 (1996) (noting that "there is no good reason to allow what is essentially surprise expert testimony," and that courts "should be vigilant to preclude manipulative conduct designed to thwart the expert disclosure and discovery process").

▮ Accordingly, we do not categorically agree with Speedy Stop's contention that all persons with personal knowledge of real property can give opinion testimony as to the market value of that property without the testimony being considered and identified as expert testimony. Such a holding would allow circumvention of discovery and disclosure rules that allow parties to prepare for trial and protect themselves from trial by ambush. Instead, we hold that subject to the provisions of Rule 701, as we discuss below, a witness who will be giving opinion evidence about a property's fair market value must be disclosed and designated as an expert pursu-

---

**2.** Prior to a 2000 amendment to the Federal Rules of Evidence, Rules 701 and 702 of the Texas and Federal Rules of Evidence were almost identical. Federal Rule 701, however, was amended to prohibit lay opinion testimony "based on scientific, technical, or other specialized knowledge within the scope of Rule 702." Fed.R.Evid. 701 (amended Dec. 1, 2000). The Advisory Committee Note explains that the change was made "to elimi-

nate the risk that the reliability requirements set forth in Rule 702 will be evaded through the simple expedient of proffering an expert in lay witness clothing." Fed.R.Evid. 701 advisory committee's notes. Texas Rule of Evidence 701 has not been similarly amended, but the same concern—that expert testimony will be offered as evidence without meeting the reliability requirements of Rule 702—underlies our opinion.

ant to discovery and other applicable rules.[3] *See* TEX.R. EVID. 702; TEX.R. CIV. P. 195.1–.4.

### b. Rule 701

■ Speedy Stop argues that Rule 701 permits any person to testify regarding the value of real property so long as the witness is familiar with its value, and La-Beff was such a witness. We do not completely agree with this argument, but agree that one key to admissibility of La-Beff's affidavit under Rule 701 is his personal familiarity with both the property and its value. And we further believe that Rule 701 encompasses the Property Owner Rule, which is based on the presumption that a property owner is familiar with her property and its value. We need not address Rule 701 apart from the Property Owner Rule in depth, however, because while LaBeff's affidavit demonstrates his expertise in real estate matters and general familiarity with Speedy Stop's property, it does not set out facts demonstrating that he was personally familiar with the Property and its fair market value, nor does it demonstrate that his opinion is not substantively based on his specialized knowledge, experience, training, and expertise. *See* TEX.R. EVID. 702.

LaBeff did not specify in his affidavit that he was familiar with the Property, nor did he state that he was familiar with its value. His affidavit was dedicated to detailing his experience, knowledge, and expertise in real estate and real estate values, including easements, and his general familiarity with Speedy Stop's business. His valuation opinion, taken from a two-page, single spaced affidavit that set out his experience, education, and general knowledge of real estate values was succinct and clear about the basis of his opinion:

> It is my opinion *based upon my knowledge, background, education and experience* that the difference in the fair market value of the property in question (which is the subject matter of the lawsuit) immediately before and immediately after the condemnation of this easement, was $62,000. Further, it is my opinion as the owner of the property in question that the difference in value, immediately before and immediately after the condemnation, was $62,000, all because of the condemnation and the easement which resulted from the condemnation (emphasis added).[4]

LaBeff's affidavit shows that his damages opinion, in substance, was based on his expertise—his "knowledge, background, education and experience"—not his personal familiarity with the Property. As such, and because he was not timely disclosed as an expert, the trial court did not abuse its discretion in excluding his opinion of damages under Rule 701.

We next consider Speedy Stop's argument that if Rule 701 did not allow the trial court to consider LaBeff's affidavit, the Property Owner Rule did. We conclude that it did not.

### 2. The Property Owner Rule

#### a. General Rule

■■ Generally, a property owner is qualified to testify to the value of her

---

3. We do not address the District's contention that LaBeff would not have qualified as an expert because he was not licensed as an appraiser, except to state that Rule 702 does not require a witness to have any particular license to qualify as an expert.

4. The District argues that LaBeff's testimony was conclusory and he did not properly arrive at his damages estimate. We need not address the argument in light of our determination that the trial court did not abuse its discretion by excluding his affidavit.

property even if she is not an expert and would not be qualified to testify to the value of other property. *See Porras v. Craig,* 675 S.W.2d 503, 504 (Tex.1984). The rule is based on the presumption that an ·owner will be familiar with her own property and know its value. *See id.*

A business organization has the power "to take action necessary or convenient to carry out its business and affairs," including the power to own and hold property. TEX. BUS. ORGS.CODE § 2.101. An organization takes action through its agents. *See Bennett v. Reynolds,* 315 S.W.3d 867, 883 (Tex.2010); *Hammerly Oaks, Inc. v. Edwards,* 958 S.W.2d 387, 391 (Tex.1997). An agent's act on behalf of the organization is the act of the organization itself. *Hammerly,* 958 S.W.2d at 391. Therefore, when an entity's agent testifies to the market value of the organization's property, the legal effect is that the actual owner of the property is testifying. *See id.*

In support of its position, the District cites *Mobil Oil Corp. v. City of Wichita Falls,* 489 S.W.2d 148 (Tex.Civ.App.-Fort Worth 1972, writ ref'd n.r.e.). In *Mobil Oil Corp.,* the court stated that the parties "failed to cite any authority to the effect that a designated agent of a corporation is an 'owner.'" *Id.* at 150. The court then concluded, citing case law from other states, that a "designated agent of a corporation cannot testify as to the value of the property of such corporation unless he first qualifies as an expert." *Id.* Speedy Stop argues that the witness in *Mobil Oil Corp.* was an independent appraiser as opposed to an agent of the corporation and the court's statements discussing the Property Owner Rule were dicta. But regardless of the witness's relation to the corporation, to the extent that *Mobil Oil Corp.* holds contrary to the rule we express today, we disapprove of it.

Through their employees, entities are as capable of knowing the market value of their property as are individuals. Many entities may have more knowledge of the fair market value of their ·property than would an individual because organizations frequently have employees whose duties require that they not only be personally acquainted with the entity's properties, but also require the employees to obtain and maintain current valuations of the entity's property for business reasons. LaBeff's affidavit demonstrates such a situation. Although his affidavit did not show he had personal knowledge of the Property, it showed that his job duties required him to remain aware of general market conditions for real estate and convenience stores, and that he dealt with easement issues relating to Speedy Stop's property. Thus, we see no good reason to conclude that business organizations are any less familiar with the value of their property than are individual property owners, or to preclude them from coming within the Property Owner Rule and its presumption that a property owner is familiar with its property and the property's value. *See Libhart v. Copeland,* 949 S.W.2d 783, 798 (Tex.App.-Waco 1997, no writ); *Taiwan Shrimp Farm Village Ass'n, Inc. v. U.S.A. Shrimp Farm Dev., Inc.,* 915 S.W.2d 61, 71 (Tex.App.-Corpus Christi 1996, writ denied).

However, we recognize that an entity necessarily testifies through its agents and representatives and that applying the Property Owner Rule and its presumptions to every employee or representative of an entity could result in abuse of the rule.

#### b. An Entity's Testimony Under the Property Owner Rule

There must be some limit on who is permitted to testify on an entity's behalf under the Property Owner Rule. Other-

wise, as the District points out, an entity might identify various employees and other persons in discovery as having knowledge of relevant facts, then after discovery has closed, pick a person who has not been deposed to testify to the value of the property at issue. Such a situation could allow trial by ambush by allowing circumvention of the means by which witnesses and opinions are to be timely disclosed, such as requirements of discovery rules and scheduling orders.

Some jurisdictions extend the Property Owner Rule to corporations, but permit only an officer or director of the corporation to testify on the corporation's behalf on the theory that the representative of the property owner must be someone who controls and manages the corporation. *Weber v. W. Seattle Land & Improvement Co.*, 188 Wash. 512, 63 P.2d 418, 420–21 (1936); *see also Tennessee v. Livingston Limestone Co.*, 547 S.W.2d 942, 943–44 (Tenn.1977); *M.A. Realty Co. v. State Rds. Comm'n*, 247 Md. 522, 233 A.2d 793, 796 (1967). However, there may be instances where officers or directors, especially of larger corporations or business entities, have limited or no knowledge about specific company property and its value. Those circumstances do not seem to warrant the blanket application of a presumption that an officer or director has knowledge of an entity's property and its market value.

Other jurisdictions allow shareholders to testify to fair market value on behalf of a corporate property owner. *See Tokles & Son, Inc. v. Midwestern Indem. Co.*, 65 Ohio St.3d 621, 605 N.E.2d 936, 941 (1992). But shareholders of a corporation are not owners of corporate assets. *See Tenneco, Inc. v. Enter. Prods. Co.*, 925 S.W.2d 640, 645 (Tex.1996) (citing *McClory v. Schneider*, 51 S.W.2d 738, 741 (Tex.Civ.App.-Amarillo 1932, writ dism'd)). Nor are shareholders generally considered to be agents of the corporation absent some basis other than their shareholder status. *See Johnson v. Brewer & Pritchard, P.C.*, 73 S.W.3d 193, 200 (Tex.2002) (noting that an agency is the consensual relationship between two parties where one, the agent, acts on behalf of the other, the principal, and is subject to the principal's control). And for the same reasons we discuss above regarding officers and directors of entities, application of a blanket presumption that shareholders have knowledge of all a corporation's property and its value is unwarranted. In some instances allowing shareholders to testify to the value of a corporation's property may be appropriate; in some instances it may not. For example, in *Maxey v. Texas Commerce Bank of Lubbock* the sole shareholder, who was also the president of a closely held corporation, was allowed to testify as to the value of the corporation's property. 571 S.W.2d 39, 46 (Tex.Civ.App.-Amarillo 1978, writ ref'd n.r.e.).

We believe the better approach is to look both to the position of the witness and to the substance of the witness's duties instead of looking only at the witness's title or status. Limiting the class of employees qualified to testify under the Property Owner Rule accommodates the interests of both the entity and parties opposing the entity. The entity can prove the value of its property through certain categories of employees whose positions and duties warrant applying a presumption that they are familiar with the entity's property and its value, but the adverse party is not disadvantaged by having to depose, investigate and prepare for multiple witnesses whose knowledge and testimony may not be relevant on the value issue.

A reasonable balance as to who may testify under the Property Owner Rule on behalf of an entity is struck by allowing

such testimony only from an officer in a management position with duties that at least in some part relate to the property at issue, or an employee of the entity in a substantially equivalent position. *See Redman Homes, Inc. v. Ivy*, 920 S.W.2d 664, 669 (Tex.1996); *Porras*, 675 S.W.2d at 504.

### c. Application to LaBeff

■ LaBeff was not an employee of Speedy Stop; he was an officer for Speedy Stop's general partner, C.L. Thomas, Inc. C.L. Thomas was not the owner of Speedy Stop's property. *See* Tex. Bus. & Orgs. Code § 152. 101 ("Partnership property is not property of the partners."); § 153.003(a) (stating that rules governing general partnerships also apply to limited partnerships absent conflict); *see also Stanley v. Reef Sec., Inc.*, 314 S.W.3d 659, 664 (Tex.App.-Dallas, 2010 no pet.); *Siller v. LPP Mortg., Ltd.*, 264 S.W.3d 324, 329 (Tex.App.-San Antonio, 2008 no pet.). Even though LaBeff had general knowledge of Speedy Stop's property, he did not fall into the category of entity representatives to whom the Property Owner Rule applies. He did not qualify to testify to the value of the Property under the Property Owner Rule, and the trial court did not abuse its discretion by excluding his affidavit to the extent it offered his opinion as to Speedy Stop's damages.

### B. Ambroses's Appraisal Testimony and Affidavit

■ Speedy Stop also offered Ambrose's appraisal and testimony that the District introduced before the special commissioners. Speedy Stop contended that this evidence, although comprising out-of-court statements offered for their truth, was nevertheless admissible as an admission by the District. *See* Tex.R. Evid. 801(e)(2). The District objected, arguing the trial court should exclude this evidence

because the testimony of witnesses in an administrative proceeding is not admissible in a de novo appeal to the trial court; neither party timely designated Ambrose as an expert; and his testimony was not an admission by the District because Ambrose was not an agent of the District. The trial court sustained the District's objections and excluded Ambrose's testimony and appraisal from evidence.

Speedy Stop argues that Ambrose's opinions before the commissioners are admissions by the District, and as such are admissible as non-hearsay. The court of appeals did not address this issue, but rather than remanding to the court of appeals for it to do so, we address it in the interest of judicial economy. *See* Tex. R.App. P. 53.4; *Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. CBI Indus., Inc.*, 907 S.W.2d 517, 520 (Tex.1995) (addressing and deciding an issue not addressed by the court of appeals); *see also Little v. Tex. Dep't of Criminal Justice*, 148 S.W.3d 374, 384 (Tex.2004) (recognizing the Court's authority to consider an issue not decided by the court of appeals).

Ambrose was hired by the District to estimate the amount of compensation due to Speedy Stop and provide a written appraisal of the Property. In the hearing before the special commissioners he was called as a witness by the District and the substance of his testimony was that Speedy Stop's damages were $9,342 for the taking. The District also referred the commissioners to Ambrose's written appraisal, which was to the same effect.

Certain out-of-court statements offered for their truth are not hearsay. *See* Tex.R. Evid. 801(e). Among those are admissions by a party-opponent, which include:

(A) the party's own statement in either an individual or representative capacity;

(B) a statement of which the party has manifested an adoption or belief in its truth;

(C) a statement by a person authorized by the party to make a statement concerning the subject;

(D) a statement by the party's agent or servant concerning a matter within the scope of the agency or employment, made during the existence of the relationship; or

(E) a statement by a co-conspirator of a party during the course and in furtherance of the conspiracy.

TEX.R. EVID. 801(e)(2).

The District argues that Ambrose's testimony is not an admission under the agency prong of Rule 801(e)(2)(D) because there is no proof that Ambrose was the District's agent or employee. We agree there is no evidence Ambrose was the District's employee. But even assuming there was no evidence of an agency relationship either,[5] Rule 801(e)(2)(B) allows for admissions by a party-opponent when the party-opponent has manifested an adoption or belief in the statement's truth. TEX.R. EVID. 801(e)(2)(B).

It has long been the rule that "[w]here a party has used a document made by a third party in such way as amounts to an approval of its contents, such statement may be received against him as an admission by adoption." See Tex. Reciprocal Ins. Ass'n v. Stadler, 140 Tex. 96, 166 S.W.2d 121, 125 (Tex.Comm'n App.1942) (citing Thornell v. Mo. State Life Ins. Co., 249 S.W. 203 (Tex.Comm'n App.1923, judgm't adopted)). The court in East Tennessee Natural Gas Co. v. 2.67 Acres in Smyth County, Va., No. 4:02–CV–00220, 2006 WL 1171943 (W.D.Va. Apr. 28, 2006), addressed a situation similar to that which we consider. In that case the plaintiff, East Tennessee Natural Gas Company, hired an appraiser to determine the value of land prior to the hearing before a special commission. Id. at *2. Ultimately the gas company did not introduce the appraisal at the hearing because it did not agree with the appraiser's value. Id. The property owner sought to introduce the appraisal against the gas company, but the gas company objected on hearsay grounds. Id. at *11. The gas company argued that the appraisal could not be an admission by party-opponent pursuant to Federal Rule of Evidence 801(e)(2)[6] because the appraiser was not

---

**5.** Of course, had an agency relationship been established, Ambrose's affidavit would be admissible under Rule of Evidence 801(e)(2)(D). See, e.g., Tex. Comm'n on Human Rights v. Kinnear, 986 S.W.2d 828, 833–34 (Tex.App.-Beaumont 1999) (upholding a decision to exclude expert testimony where the expert was not shown to be an agent), rev'd in part on other grounds, 14 S.W.3d 299 (Tex.2000); Handel v. Long Trusts, 757 S.W.2d 848, 850–51 (Tex.App.-Texarkana 1988, no writ) (refusing to admit testimony as an admission by party-opponent where the record did not show the extent of an agency relationship); see also Collins v. Wayne Corp., 621 F.2d 777, 782 (5th Cir.1980) (holding expert's accident report was admissible under Federal Rule of Evidence 801(d)(2)(C) where it determined the expert to be an agent of the party), superseded on other grounds by rule as stated in

Mathis v. Exxon Corp., 302 F.3d 448 (5th Cir.2002).

**6.** Texas Rule of Evidence 801 is almost identical to its Federal counterpart. The federal rule provides that admissions by party-opponents are not hearsay if:

The statement is offered against a party and is
(A) the party's own statement, in either an individual or a representative capacity, or
(B) a statement of which the party has manifested an adoption or belief in its truth, or
(C) a statement by a person authorized by the party to make a statement concerning the subject, or
(D) a statement by the party's agent or servant concerning a matter within the

an agent of the gas company and the gas company never authenticated or adopted the appraisal. *Id.* The court held that the gas company did not adopt the appraisal, reasoning that because the gas company "chose not to offer it before the Commission, then it seems logical that the [gas company] did not want to adopt or authenticate the appraisal." *Id.* And "without the [gas company's] adoption or authentication, the appraisal amounts to an out of court statement which the [property owners] were offering to prove its truth." *Id.*

Although the court in *East Tennessee Natural Gas Co.* excluded the appraisal, the court's reasoning suggests that had the gas company sought to offer the appraisal before the commission, the court would have concluded that the gas company adopted the appraiser's valuation as true. *See id.* That is the situation before us in this case. The District presented both Ambrose's testimony and his appraisal to the commissioners as evidence of Speedy Stop's damages.

Speedy Stop cites *Yarbrough's Dirt Pit, Inc. v. Turner,* 65 S.W.3d 210 (Tex.App.-Beaumont 2001, no pet.), in support of its contention that Ambrose's appraisal was an admission by the District. There the court of appeals considered the effect of deposition testimony of a witness hired and designated by Yarbrough as an expert witness on the subject matter involved in the suit:

> Based on his designation by Yarbrough as an expert witness and the tenor of the deposition questions submitted to

him, Nalle was specifically authorized to speak on behalf of Yarbrough about the fault of the parties. We hold that a conclusion of an expert witness hired by an opposing party to speak on the subject matter on behalf of the party opponent is admissible against the party opponent, and the conclusion may be relied on in a motion for summary judgment even if the opposing expert witness does not disclose the bases for the conclusion adverse to the expert's client.

*Id.* at 214. The circumstances in *Yarbrough's* are different from those before us, and we need not decide whether the conclusion of an expert hired and designated by a party is always admissible against that party. But we agree with Speedy Stop that in this case the District manifested its belief in and approval of Ambrose's opinion as to Speedy Stop's damages: it called him as a witness to testify to the special commissioners regarding that opinion and proffered his written appraisal to them in support of his testimony. *See* Tex.R. Evid. 801(e)(2)(B). Thus, the appraisal is admissible against the District as an admission by adoption. *See* Tex.R. Evid. 801(e)(2)(B); *see also Stadler,* 166 S.W.2d at 125. Our conclusion is also supported by other cases in a variety of different contexts. *See Fox v. Taylor Diving & Salvage Co.,* 694 F.2d 1349, 1355 (5th Cir. 1983) (holding that because the plaintiff's expert witness based his opinions regarding lost wages upon the assumption that the plaintiff was not a "Jones Act seaman," the plaintiff was precluded from present-

---

scope of the agency or employment, made during the existence of the relationship, or (E) a statement by a coconspirator of a party during the course and in furtherance of the conspiracy.

Fed.R.Evid. 801(e)(2). Where the Federal Rules of Evidence are similar, we may look to federal case law for guidance in interpreting the Texas evidentiary rules. *See E.I. du Pont*

*de Nemours & Co., Inc. v. Robinson,* 923 S.W.2d 549, 555–57 (Tex.1995) (consulting federal case law when interpreting Texas Rule of Evidence 702); *Bradley v. State ex rel. White,* 990 S.W.2d 245, 248–49 (Tex.1999) (discussing Federal Advisory Committee Notes and federal case law when interpreting Texas Rule of Evidence 605 because it "is identical to its federal counterpart").

ing a theory of recovery resting on the Jones Act); *Buckley v. Airshield Corp.,* 116 F.Supp.2d 658, 664 (D.Md.2000) (holding that party adopted documents as true by submitting them as exhibits in a separate case); *Harris v. United States,* 834 A.2d 106, 117 (D.C.2003) ("Submission of documents to a court also suggests adoption of the documents."); *see also* KENNETH S. BROWN ET AL., MCCORMICK ON EVIDENCE § 261, at 211 (6th ed. 2006) ("When a party offers in evidence a deposition or an affidavit to prove the matters stated therein, the party knows or should know the contents of the writing so offered.... Accordingly, it is reasonable to conclude that the writing so introduced may be used against the party as an adoptive admission in another suit.").

Rule 801(e)(2) provides that admissions of a party-opponent are admissible non-hearsay. TEX.R. EVID. 801(e)(2). And because the evidence was an admission by the District, as opposed to testimony by a witness called by Speedy Stop, Speedy Stop was not required to identify Ambrose as an expert before his opinion could be admitted. *See Bay Area Healthcare Grp., Ltd. v. McShane,* 239 S.W.3d 231, 235 (Tex.2007) ("*[A]ny* statement by a party-opponent is admissible against that party."). Further, admissions by a party opponent can occur outside a judicial proceeding and are not inadmissible simply because they occur in an administrative hearing such as was involved here. *See* TEX.R. EVID. 801(e)(2) (permitting as evidence statements made out of court); *Bay Area Healthcare Grp., Ltd.,* 239 S.W.3d at 235. The trial court erred by excluding Ambrose's affidavit and appraisal.

Ambrose's testimony as to damages and his written appraisal comprised some evidence of damages. The trial court erred by excluding them and thus it erred by granting the District's motion for summary judgment.

## III. Conclusion

The trial court did not abuse its discretion by excluding the damages opinion La-Beff expressed in his affidavit. However, the court erred by excluding Ambrose's testimony and appraisal as to Speedy Stop's damages.

We affirm the court of appeals' judgment reversing the judgment of the trial court and remanding the case for further proceedings.

Justice WILLETT filed a concurring opinion, in which Justice LEHRMANN joined.

Justice GUZMAN did not participate in the decision.

Justice WILLETT, joined by Justice LEHRMANN, concurring.

The Court addresses application of Texas Rule of Evidence 701 and the Property Owner Rule when a business organization owns the property condemned by the government. It holds that when a business entity owns the property, a natural person can testify as to its value under the Property Owner Rule if the person is "an officer in a management position with duties that at least in some part relate to the property at issue, or an employee of the entity in a substantially equivalent position." [1] The Court concludes that the Property Owner Rule does not apply because LaBeff was not an officer or employee of the limited partnership that owned the property; rather, he was an officer of the corporation serving as the general partner of the limited partnership.

1. 337 S.W.3d at 855.

The Court further holds that one key to whether LaBeff's affidavit was admissible under Rule 701 was "his personal familiarity with both the property and its value."[2] The Court notes the lack of proof in this regard. The opinion, as I read it, leaves open the question whether LaBeff's affidavit would have been admissible under Rule 701 (but not the Property Owner Rule) if he had such personal knowledge, even though he was not an officer of the limited partnership that owned the property.

Limited partnerships, including real-estate limited partnerships, are popular investment vehicles.[3] They commonly consist of passive limited partners[4] and a general partner that is a corporation.[5] Since limited partnerships are managed by the general partner or partners,[6] there is no particular reason for a limited partnership to have any managerial employees—or indeed any employees at all. Therefore, the Court's treatment of the Property Owner Rule means that many, if not most, limited partnerships could never proffer a witness on the value of their real estate holdings under the Property Owner Rule.

Yet the Court does contemplate application of the Property Owner Rule to a managing officer of the entity owning the property or an employee of the entity in a "substantially equivalent" position. In the case of a limited partnership, I would hold that a managing officer of the corporate general partner with duties relating to the property may testify as to the value of partnership property without being qualified as a expert witness, provided the officer is familiar with the specific property in issue and its value. Such a rule would provide some parity of treatment of limited partnerships and corporations in condemnation proceedings. I do not think it matters whether this rule is seen as an application of the Property Owner Rule or Rule 701 or both. Regardless, in this case LaBeff did not meet the personal knowledge requirement and his affidavit was properly excluded, as the Court holds.

---

**2.** *Id.* at 852.

**3.** *See* 19 Robert W. Hamilton et al., Business Organizations § 13.2 (Tex. Practice 2004) ("The limited partnership offers certain advantages that may make it an attractive choice of business entity.... [P]artnership tax treatment for federal income tax purposes may provide significant tax savings when compared with the tax treatment of either a C corporation or an S corporation.").

**4.** *Id.* § 13.1 ("Limited partners are, at least in the statutory default mode, passive investors whose liability is limited to their capital contributions.").

**5.** *Id.* §§ 1.8 ("In practice today, most limited partnerships have only a single general partner and that partner is usually a nominally capitalized limited liability entity such as a corporation or limited liability company."); 13.2 ("The principal disadvantage of the limited partnership form as compared with a corporation or a limited liability company relates to the liability of the owners. The general partners of a limited partnership are personally liable for partnership obligations. To minimize this disadvantage, limited partnerships are often formed with a corporate or limited liability company general partner...."); 14.7 ("Corporate or limited liability ("LLC") general partners are frequently used to avoid exposing individuals or other entities to liability as general partners [of a limited partnership].").

**6.** *Id.* § 13.1 ("General partners of a limited partnership, like partners of a general partnership, have managerial rights...."); Tex. Bus. Org. Code §§ 153.102, .152.