**Reversed and Rendered; Majority and Dissenting Opinions filed April 24, 2012.**



In The

# Fourteenth Court of Appeals

---

### NO. 14-11-00045-CV

---

**PRESTON RESERVE. L.L.C., ARTHUR A. LANCASTER, JR., LACY C. HOWE, & ROBERT S. PEEK, JR., Appellants**

**V.**

**COMPASS BANK, Appellee**

---

**On Appeal from the 189th District Court
Harris County, Texas
Trial Court Cause No. 2009-48427**

---

### D I S S E N T I N G    O P I N I O N

In this deficiency action, the trial court, as fact finder in the bench trial below, heard evidence of the subject property's fair market value as of May 5, 2009. The Borrowers' "property owner," Lacy Howe, opined that the fair market value of the property was $2.7–2.8 million. The lending entity's "property owner," Carl Scott, opined that the fair market value of the property was $1 million. The trial court entered judgment for a deficiency calculated on a fair market value of $2.4 million as of May 5, 2009.

The trial court entered no findings; in particular, the trial court made no findings about how it arrived at the fair market value of the property. Yet, the panel majority reverses, concluding "there was no legally sufficient evidence to support a fair market-value finding of less than $2.7 million." I disagree with this conclusion for two reasons: (1) the fair-market-value testimony of Compass's loan officer Carl Scott is, pursuant to the Property Owner Rule, some evidence of fair market value less than $2.7 million; and (2) even if Scott's testimony is no evidence, there is ample other evidence in the record to support the trial court's determination that the fair market value was less than $2.7 million.

## ANALYSIS

1. *Scott's fair-market-value opinion is some evidence under the Property Owner Rule.*

Citing *Reid Road Municipal Utility District No. 2 v. Speedy Stop Food Stores, Ltd.*, 337 S.W.3d 846, 847–48 (Tex. 2011), the majority holds that (a) the Property Owner Rule applies to corporate entities; and (b) permits "officers of the entity in managerial positions with duties related to the property to provide a lay opinion about the value of the property." According to the majority, Scott is "an officer of Compass Bank in a managerial position with duties related to the property." I agree that the record supports this conclusion. The majority also holds that the "Property Owner Rule" applies to Scott such that he may be the entity witness on market value. I agree with this application of law to fact. As such, I concur with the majority that Scott's testimony was properly admitted under the Property Owner Rule, and a presumption arose that he was familiar with the entity's property and knew its value. *See id.* at 853.

However, the majority disregards Scott's opinion. Notwithstanding the absence of a trial objection to the testimony on the basis of Texas Rule of Evidence 701,[1] the

---

[1] The Borrowers did object to Scott's testimony on the grounds that he was not designated as an expert and could not, therefore, provide opinion testimony. When counsel for Compass directed the court to the Property Owner Rule, the Borrowers articulated no other objections to Scott providing opinion testimony prior to its admission.

2

majority rejects Scott's opinion because the majority believes that it was not based on personal knowledge and familiarity under Texas Rule of Evidence 701. Specifically, the panel concludes that "the evidence before us shows that the Borrowers rebutted the presumption that Scott was personally familiar with the property's fair market value in this case."

Not only has the majority sustained an objection not made, the majority has misapplied the standard of review and ignored uncontroverted testimony to reach this conclusion. First, under *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005), we are to credit Scott's testimony and indulge every reasonable inference unless the fact finder could not. Here, the fact finder could credit the evidence, as the majority finds it was properly admitted. Thus, *City of Keller* instructs us to imply all findings in favor of the judgment; here, that means the fact finder credited Scott's testimony and found that the Borrowers did not rebut the presumption. Instead, the majority substitutes its judgment and finds the presumption to have been rebutted.

Second, the majority holds that Scott's "familiarity with some of the property's attributes" is insufficient to show familiarity with the property's value based on those attributes. I disagree. Scott first met the Borrowers around January 2009. Scott was working with the Borrowers' group on "this and three other loans that they had with the bank, with [the] objective being to attempt to salvage the loans as performing loans with the bank." In April, he concluded that the subject property was not salvageable because the Borrowers "informed me they didn't intend to build on it and had been unable to sell it for enough to pay off our loan [approximately $2,529,172] after having marketed it with an agent for probably a year." Thus, it was Scott's decision to foreclose on the property, and he was the initial substitute trustee for the foreclosure sale.

When questioned about the property and the basis for his opinion, Scott knew that:

- the property was zoned for multifamily housing;
- the plat for the property expired in January 2010, so it was "not feasible for a potential purchaser to begin and complete construction in time to meet the

3

local zoning and planning requirements";

- 20% of the property was in the flood plain and could not be built upon—it was completely unusable for construction;
- financing for the property was virtually nonexistent because it was raw land at that time.

The face of the Integra Realty Resources appraisal on the subject property indicates that it was "prepared for: Mr. Carl Scott." Scott knew enough about the property and the subject market that he strongly disagreed with the February 2009 appraisal based upon his knowledge of "the reality in the market, the offers that were being received, the saturation in the market that [he] discovered existed." Thus, Scott demonstrated familiarity with the property's attributes; the property's lack of salvageability when compared to the Borrowers' other properties; familiarity with comparable sales as supplied by the Integra appraisal; familiarity with other factors specific to the property that would affect the willing buyer/willing seller negotiations negatively;[2] and familiarity with the saturation of market that would impact his ability to sell the property.

I would hold that Scott's lay testimony on fair market value was some evidence in support of the trial court's decision to find a fair market value of less than $2.7 million.

2.     *Other competent evidence of fair market value*

Even if the majority's disregard of Carl Scott's opinion on fair market value as no evidence is correct, I would nonetheless affirm the decision of the trial court because there is ample other evidence to support the trial court's decision that the fair market value of this property on May 5, 2009, was less than $2.7 million.

At the outset, I note that the majority implies this trial court was obligated to accept the lay opinion of Lacy Howe that the fair market value of the property was $2.7 million. Specifically, the majority suggests that the fact finder may not award damages within the evidentiary range unless the record discloses "a means of computing" the

---

[2] Under longstanding Texas precedent, the trial court should consider "all factors . . . which would reasonably be given weight in negotiations between a seller and a buyer" of the property in arriving at a fair market value. *City of Austin v. Cannizzo*, 267 S.W.2d 808, 813–14 (Tex. 1954).

4

damage finding. To the extent that the majority intends to hold that the fact finder must blindly choose between the fair market values supplied to them by witnesses, I disagree.

A fact finder always has discretion to award damages within the range of evidence presented at trial as long as there is a rational basis for the calculation. *See Gulf States Util. Co. v. Low*, 79 S.W.3d 561, 566 (Tex. 2002). The fact finder must have an evidentiary basis for the findings. *See Salinas v. Rafati*, 948 S.W.2d 286, 289 (Tex. 1997). When the award falls within the evidentiary range, the reviewing court should not speculate on how the fact finder arrived at the amount.[3] *Drury Sw., Inc. v. Louie Ledeaux #1, Inc.*, 350 S.W.3d 287, 292 (Tex. App.—San Antonio 2011, pet. denied). A fact finder's verdict on damages cannot exceed the amount shown by the evidence, but it can reduce the amount below the opinion of an expert when there are factors that would justify a reduction. *See Geo Viking, Inc. v. Tex-Lee Operating Co.*, 817 S.W.2d 357, 363 (Tex. App.—Texarkana 1991, writ denied).

The trial court was well within the range of evidence when it selected a fair market value of less than $2.7 million. For example, appellant Lacy Howe testified as an interested witness by virtue of a personal guarantee on the note underlying the deficiency alleged. He provided his opinion that the subject property had a market value of $2.7 million on May 5, 2009. He and his co-appellants paid $3.2 million for the property 15 months earlier. He acknowledged the following about the property that impacted its value: the market for raw land had dropped in the interim; available financing was limited; part of the property was within the flood plain; the Borrowers had the property on the market unsuccessfully for 2–3 months prior to foreclosure; and the value of the property was impacted by a foreclosure and its sale by a bank. These are factors that

---

[3] The amount awarded by the trial court here is $300,000 less than Howe's opinion on fair market value. The majority rejects the $300,000 "specs and plans" as no evidence of fair market value. For the majority not to consider other evidence that places the trial court's award within the range of evidence is tantamount to implying a fact finding on the trial court's computation of fair market value. We do not treat statements made by the trial court on the record in a bench trial as fact findings. *See In re W.E.R.*, 669 S.W.2d 716, 716 (Tex. 1984) (per curiam); *Rutledge v. Staner*, 9 S.W.3d 469, 470 (Tex. App.—Tyler 1999, pet. denied).

5

would justify a reduction from $2.7 million. *See Cannizzo*, 267 S.W.2d at 813–14.

Further, the majority acknowledges but rejects evidence that the subject property actually sold for $980,000. I do not disagree with the majority's determination that the sale price at a foreclosure sale is no evidence of fair market value. However, in this case, Compass itself bought the subject property at the foreclosure sale for $1.2 million. That sum would be no evidence of fair market value. According to Scott, Compass ultimately sold the property for $980,000 "[a]fter working through at least two different purchase opportunities and not being able to sell it for more." Over objection, the trial court admitted this evidence as "some evidence of what the land was worth at the time in question."[4] The Borrowers neither argued nor offered evidence that the $980,000 sale was in any way not between willing buyer and willing seller. Thus, the trial court could have considered the subsequent sale of the property for $980,000 as some evidence that in May 2009, the property was worth less than $2.7 million.

Howe also reviewed and considered the February 27, 2009 Integra appraisal[5] of the property. The appraisal establishes a "market valuation" as of February 27, 2009, at $2,730,000, and a liquidation value of $1,365,000 on that same date.[6] These figures are based upon an analysis of comparable sales. The appraiser established the market figure based upon $6.00 per square foot on 454,331 usable square feet.[7] However, the "Land

---

[4] The Borrowers have not challenged this evidentiary ruling on appeal.

[5] The majority suggests that the Integra appraisal is (a) not competent evidence of fair market value because it was not admitted "for the truth of what's asserted therein"; and (b) did not form a basis for the trial court's conclusion of fair market value. The trial court's evidentiary rulings that are relied upon by the majority are far from clear. In addition to the quoted portions of the transcript, the record reflects that the trial court also indicated during closing arguments that he was going to have to "make [his] best stab" at market value based upon (a) opinions of the former owner and the owner-to-be; (b) other data points; (c) "offers that were made, maybe"; (d) sales afterward; and (e) "other things that shed some light on minimum values, maybe, or maximum values, I don't know." More importantly, the trial court received in evidence the exact same appraisal opinions on fair market value and liquidation value from Howe himself, without objection.

[6] According to the report, a liquidation value "includes a condition that 'consummation of sale will [occur] within a [severely] limited future [marketing] period specified by the client.'"

[7] The usable square feet calculation excludes an estimate of acreage within the flood plain, but the report states, "[w]e requested, but were not provided with exact acreage within the 100 year flood plain."

Value Conclusion" provides as follows:

> Prior to adjustments, the sales reflect a range of $4.78–$7.04 per square foot. After adjustment, the range is narrowed to $4.27–$6.27 per square foot, with an average of $5.30 per square foot. To arrive at an indication of value, we place primary emphasis on sales 1, 2, and 3 and secondary emphasis on the remaining comparable sales as well as supplementary land listings.

Thus, the range of evidence of value places the figure selected by the fact finder, $2,400,000, in the middle of the evidence on value.[8]

Howe, himself, explained the difference between the appraisal's fair market value figure and its liquidation figure:

> Q. Now, this appraisal gives two values for the property. If you could, would you turn to Page 733. It gives a market value of 2,730,000 and a liquidation value of $1,365,000?
>
> A. Yes.
>
> Q. Is that correct?
>
> A. That's correct
>
> Q. Now, did — in liquidation value, under the extraordinary assumptions and hypothetical conditions, it defines liquidation value includes a condition that consummation of a sale will occur within a severely limited future marketing period specified by the client. If you have a very limited marketing period, what does that do to the types of offers you're going to get?
>
> A. They are going to be lower. And if you are a person making offers and you want to close quickly, typically, a seller would take less money. If I am going to close something immediately, then do a protracted due diligence period.
>
> Q. Does that affect the fair market value?
>
> A. Certainly does.

Although Howe also gave testimony contrary to the above on the impact on fair market

So the appraiser had to make an assumption about the unusable acreage.

[8] The range of evidence is a result of usable square feet multiplied by (a) the "average" value presented in the report ($5.30), which equals $2,407,954.30; (b) the low adjusted range ($4.27), which equals $1,939,993.37; and (c) the high adjusted range ($6.27), which equals $2,848,655.37.

value, the fact finder was entitled to find this to be the credible testimony.[9]

The above evidence—alone or in combination—provides a range of evidence that supports a fair market value of less than $2.7 million. The trial court's decision is not arbitrary and does not exceed the evidence.

The evidence is legally sufficient to support the trial court's judgment in this cause. The judgment should be affirmed.



/s/     Sharon McCally
        Justice



Panel consists of Justices Brown, Boyce, and McCally. (Boyce, J., Majority.)

---

[9] I am particularly troubled by the majority's criticism of the trial court's failure to document its credibility determinations. There is no authority for requiring a fact finder to articulate its credibility determinations before accepting any witnesses' testimony—in whole or in part. Thus, for the majority to reject the possibility that the trial court departed downward from Howe's damages figure due in part to a credibility determination is an abandonment of the proper standard of review giving deference to those fact findings.

8