

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

No. 07-22-00016-CR

MIGUEL PAREDES-MALAGON, APPELLANT

V.

THE STATE OF TEXAS, APPELLEE

On Appeal from the 20th District Court
Milam County, Texas
Trial Court No. CR25,775, Honorable John W. Youngblood, Presiding

January 12, 2023

MEMORANDUM OPINION

Before PARKER and DOSS and YARBROUGH, JJ.

Following a plea of not guilty, a jury convicted Appellant, Miguel Paredes-Malagon, of indecency with a child and sentenced him to eighteen years' confinement and assessed a $10,000 fine.[1] Appellant presents three issues challenging his conviction and a fourth issue challenging the amount of court costs assessed.[2] By his first three issues,

---

[1] TEX. PENAL CODE ANN. § 21.11(a)(1). As charged, the offense is a second degree felony. § 21.11(d).

[2] Originally appealed to the Third Court of Appeals, this appeal was transferred to this Court by the Texas Supreme Court pursuant to its docket equalization efforts. TEX. GOV'T CODE ANN. § 73.001. Should a conflict exist between precedent of the Third Court of Appeals and this Court on any relevant issue, this appeal will be decided in accordance with the precedent of the transferor court. TEX. R. APP. P. 41.3.

he contends the trial court abused its discretion in admitting (1) Ashley Lomas's expert testimony because her opinion was not shown to be reliable or relevant; (2) Cara Duong's testimony because her opinion was not shown to be reliable; and (3) excerpts from J.P.'s forensic interview as prior consistent statements because the interview occurred after the motive for fabrication arose. By his fourth issue, Appellant maintains the trial court erroneously assessed court costs under statutes that apply only to convictions for offenses committed after January 1, 2020, and he was convicted of an offense committed in 2014. The State did not favor this Court with a brief. We reform the judgment and affirm.

## BACKGROUND

Appellant and his wife married in the late 1990s. In April 2016, the parties separated, and Appellant's wife filed for divorce in July 2017.

J.P., one of Appellant's biological daughters who was nineteen at the time of trial, alleged Appellant inappropriately touched her on several occasions when she was approximately eleven years old. Following an investigation, J.P. was interviewed by Ashley Lomas, a forensic examiner, on September 6, 2017. During that interview, J.P. described various incidents of inappropriate touching by her father.

Appellant was eventually arrested for indecency by contact and was indicted in 2017. His defensive theory was J.P. fabricated the allegations against him due to the pending divorce and coaching from her mother.

2

Central to this appeal is the testimony of Lomas, whom the State proffered as an expert, and the testimony of Cara Duong, a social worker and therapist who treated J.P. and who was presented as a lay witness.

## STANDARD OF REVIEW

An appellate court reviews the admission of evidence for abuse of discretion and will not disturb the decision absent a clear abuse of discretion. *Apolinar v. State*, 155 S.W.3d 184, 186 (Tex. Crim. App. 2005). Appellate review of a trial court's ruling on the admissibility of scientific expert testimony is also reviewed for abuse of discretion. *Weatherred v. State*, 15 S.W.3d 540, 542 (Tex. Crim. App. 2006). A court abuses its discretion when its ruling is outside the zone of reasonable disagreement. *Montgomery v. State*, 810 S.W.2d 372, 391 (Tex. Crim. App. 1990). Additionally, even if we find a trial court abused its discretion, a judgment of conviction will not be reversed if the error was harmless. TEX. R. APP. P. 44.2(b); *McClellan v. State*, 143 S.W.3d 395, 401 (Tex. App.—Austin 2004, no pet.).

### ISSUE ONE—EXPERT TESTIMONY OF ASHLEY LOMAS

Appellant contends the trial court abused its discretion in admitting Lomas's testimony because her opinion was not reliable or relevant. We agree but find that the erroneous admission of her testimony was harmless.

The State proffered Lomas as an expert witness to testify about her forensic interview with J.P. During a hearing outside the jury's presence, Lomas was questioned on her qualifications to testify as an expert. During direct examination, she testified about her credentials and her extensive training in abuse, neglect, and forensic examination.

3

During cross-examination, defense counsel inquired on the topics she intended to address to which she responded that she would discuss forensic interviewing and, if asked, offer her professional opinion on that subject. To expedite the hearing, defense counsel requested that the State narrow the topics to be addressed. The State explained its intention to question Lomas on the signs and symptoms commonly exhibited by a victim of child abuse based on her review of J.P.'s interview and her medical records.

Defense counsel continued his cross-examination by asking Lomas if she could identify scientific literature regarding the signs and symptoms of abuse and her observations for sensory details. She testified that she had read articles on the topic but could not recall any specifics. She disputed that she was required to reference research and literature to testify as an expert in forensic interviewing. She attested to being an "expert in forensically interviewing children. I'm an expert in talking with them in a non-leading, non-coercive manner gathering details." When challenged that her testimony regarding sensory details was outside the scope of her expertise, she replied, "[s]o it's in the Texas Penal Code or something like that. I have been to training where they said that you're an expert as part of forensic interviewing."

Defense counsel objected to Lomas offering an opinion based on unknown literature and studies and claimed that her role as a forensic interviewer did not meet the requirements of an expert. Counsel claimed that her testimony was unreliable and irrelevant and could possibly mislead the jury.

The trial court found that Lomas was "obviously an expert in interviewing and extracting information." The court noted that simply because she could not quote specific pieces of literature did not mean that she could not describe the scientific principles in

4

support of her opinion. The court announced, "I think she knows the general principles of her practice" and ruled that Lomas could testify as an expert but could not conclude that J.P.'s symptoms indicated she was abused by Appellant.

## ANALYSIS

Here, Appellant asserts that Lomas's testimony was rendered unreliable and irrelevant because she could not identify any articles pertinent to forensic interviewing and she conceded that the presence of certain signs and symptoms in a child did not indicate sexual abuse. Rule 702 governs admission of expert testimony and provides that "[i]f scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise." TEX. R. EVID. 702. For scientific evidence to be admissible, its proponent must establish to the trial court outside the jury's presence the following criteria: (1) the underlying scientific theory is valid; (2) the technique applying the theory must be valid; and (3) the technique must have been properly applied. *See Kelly v. State*, 824 S.W.2d 568, 573 (Tex. Crim. App. 1992). *See also Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 590–93, 113 S. Ct. 2786, 2795–96, 125 L. Ed. 2d 469 (1993).

Before admitting expert testimony, a trial court must determine that (1) the witness qualifies as an expert by reason of knowledge, skill, experience, training, or education; (2) the subject matter of the testimony is an appropriate one for expert testimony; and (3) admitting the expert testimony will actually assist the factfinder in deciding the case. *Vela v. State*, 209 S.W.3d 128, 131 (Tex. Crim. App. 2006); *Rodgers v. State*, 205 S.W.3d 525,

5

527 (Tex. Crim. App. 2006). These conditions are commonly referred to as (1) qualifications, (2) reliability, and (3) relevance. *Vela*, 209 S.W.3d at 131.

An expert's inability to name studies or articles relied on to render an expert opinion renders that opinion unreliable. *See Sturgeon v. State*, No. 14-04-00311-CR, 2005 Tex. App. LEXIS 10904, at *7 (Tex. App.—Houston [14th Dist.] Aug. 23, 2005, no pet.) (mem. op., not designated for publication) (citing *Weatherred*, 15 S.W.3d at 542–43). When defense counsel questioned Lomas on the scientific theory underlying her opinion, she claimed to have read articles and attended training but could not provide any specifics for testifying on sensory details on which she relied to determine if J.P. showed signs and symptoms of sexual abuse. The State failed to provide the underlying scientific theory in support of Lomas's testimony. Thus, it did not satisfy the reliability prong of *Kelly*, one of the mandatory requirements for testifying as an expert. We find the trial court abused its discretion in allowing Lomas to testify as an expert witness.

Our conclusion requires us to conduct a harm analysis to determine whether the trial court's error substantially affected Appellant's rights. The erroneous admission of evidence is non-constitutional error. *Gonzalez v. State*, 544 S.W.3d 363, 373 (Tex. Crim. App. 2018). Pursuant to Rule 44.2(b) of the Texas Rules of Appellate Procedure, "non-constitutional error must be disregarded unless it affects the defendant's substantial rights," i.e., the error had a substantial and injurious effect or influence in determining the jury's verdict. *Barshaw v. State*, 342 S.W.3d 91, 93 (Tex. Crim. App. 2011). Under this standard, an appellate court will not overturn a criminal conviction for non-constitutional error if "after examining the record as a whole" the court has a "fair assurance that the error did not influence the jury or influenced the jury only slightly." *Id.* In making this

6

determination, we consider: (1) the character of the alleged error and how it might be considered in connection with other evidence; (2) the nature of the evidence supporting the verdict; (3) the existence and degree of additional evidence indicating guilt; and (4) whether the State emphasized the complained-of error. *Gonzalez*, 544 S.W.3d at 373.

Despite Lomas's testimony being unreliable, Duong's lay opinion, discussed *infra*, supports J.P.'s contention that she suffered trauma from sexual abuse. Also, in a conviction for sexual abuse under chapter 21 of the Texas Penal Code, the uncorroborated testimony of a victim under age seventeen at the time of the offense is sufficient to support a conviction. *See* TEX. CODE CRIM. PROC. ANN. art. 38.07(a), (b); *Alba v. State*, No. 03-16-00680-CR, 2018 Tex. App. LEXIS 1261, at *7 (Tex. App.—Austin Feb. 15, 2018, no pet.) (mem. op., not designated for publication). Other evidence in support of the jury's verdict included J.P.'s. testimony of various instances of Appellant committing acts of indecency with her when she was eleven years old. J.P.'s older sister likewise testified she was sexually abused by Appellant when she was in the seventh grade. The mother testified both her daughters had revealed Appellant had sexually abused them.

During opening arguments, the State's only reference to expert testimony was as follows: "[y]ou will hear experts who have spoken to one or both of these girls get [sic] their opinion." During closing arguments, although the State did reference Lomas's "impressive" background in interviewing thousands of victims of sexual abuse and identifying signs and symptoms of abuse, the emphasis was on the testimony from J.P. and her sister that their father had sexually abused them. Based on an examination of the entire record, we cannot say that the error in admitting Lomas's testimony affected Appellant's substantial rights. Issue one is overruled.

**ISSUE TWO—LAY TESTIMONY OF CARA DUONG**

Appellant contends that regardless of Duong's presentation as a lay witness, she testified as a de facto expert and her testimony was not shown to be reliable and was therefore inadmissible. We disagree.

Cara Duong, a clinical social worker and registered play therapist, testified about her nineteen sessions with J.P. After testifying to her educational background and experience, she was questioned about State's Exhibit 2 which included her treatment plan for J.P. and case notes from their sessions. Defense counsel objected to the exhibit on hearsay and relevance grounds and asserted Duong was being proffered as an expert witness. The State responded Duong was testifying as a lay witness only. Regarding State's Exhibit 2, the State claimed it was being offered as a business records exception to the hearsay rule.[3] The trial court overruled defense counsel's objection and admitted the exhibit.

Duong's testimony focused on her treatment of J.P. for trauma experienced from sexual abuse. During direct examination, she was asked whether it was common for J.P. to have loving feelings toward Appellant because he is her parent. Her affirmative response triggered an objection from defense counsel that her testimony was outside the scope of her expertise. The State responded that it was merely asking Duong to testify from her common experiences and observations. The trial court agreed and overruled defense counsel's objection.

---

[3] *See* TEX. R. EVID. 803(6).

Duong continued her testimony and explained that she used "trauma focus cognitive behavioral therapy" (TFCBT)[4] to gradually expose J.P.'s trauma to help her process it and teach her coping skills. During cross-examination, she was questioned about whether TFCBT applied only to confirmed cases of abuse to which she responded that it was also helpful in cases of unconfirmed abuse. She was then asked to name scientific literature to support her testimony. Although she alluded to "numerous research articles on [the] efficacy of TFCBT," she could not specifically name any of them. She also could not give specifics on the underlying theory of TFCBT.

Appellant argues that Duong testified as an expert and that her inability to name research studies to support her use of TFCBT rendered her opinions unreliable and therefore inadmissible. Contrary to the situation with Lomas, Duong was presented solely as a lay witness.

## ANALYSIS

Initially, we note that during trial, Appellant's objections to Duong's testimony were based on hearsay and relevance grounds. On appeal, however, Appellant focuses solely on whether Duong's testimony was reliable. A complaint on appeal must comport with a trial court objection to avoid procedural default. *Clark v. State*, 365 S.W.3d 333, 339 (Tex. Crim. App. 2012). Appellant's legal theory that Duong's testimony was not reliable does not correspond with the hearsay and relevance objections made at trial.

Even if Appellant's complaint was not procedurally defaulted, his argument Duong testified as a de facto expert and that her testimony and State's Exhibit 2 should not have

---

[4] She testified that TFCBT focuses on awareness of thought processes, behaviors, and emotions.

been admitted cannot prevail under the deference afforded the trial court under the abuse-of-discretion standard. *See Schmidt v. State*, 612 S.W.3d 359, 366 (Tex. App.—Houston [1st Dist.] 2019, pet. ref'd) (noting that a trial court's decision to permit a witness to testify as an expert or a lay witness will not be disturbed on appeal absent a showing of an abuse of discretion).

Rule 701 of the Texas Rules of Evidence provides that if a witness is not testifying as an expert, the testimony in the form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based on the perception of the witness and (b) helpful to a clear understanding of the witness's testimony or the determination of a fact in issue. TEX. R. EVID. 701. Not all witnesses who are experts necessarily testify as experts. *Reid Rd. Mun. Util. Dist. No. 2 v. Speedy Stop Food Stores, Ltd.*, 337 S.W.3d 846, 850 (Tex. 2011). There is no bright line rule on who is a Rule 701 witness and who is a Rule 702 witness. *Id.* at 851. "A witness may have special knowledge, skill, experience, training, or education in a particular subject, but testify only to matters based on personal perception and opinions." *Id.* (citing John F. Sutton, Jr. & Cathleen C. Herasimchuk, *Article VII*: *Opinions and Expert Testimony*, 30 HOUS. L. REV. 797, 826–27 (1993) (explaining that "[a] witness with specialized training or experience is not limited to giving opinion testimony as a Rule 702 'expert'" and that if an "opinion rests on firsthand knowledge . . . then testimony under Rule 701 is also permissible")). A witness's potential qualifications as an expert does not prevent the witness from testifying within the narrower confines of Rule 701. *Reid Rd. Mun. Util. Dist. No.* 2, 337 S.W.3d at 851.

Duong's lay opinion was based on firsthand knowledge and observations from her nineteen sessions with J.P. and her testimony was based on her perception of J.P.'s

10

trauma. Observations which do not require significant expertise to interpret may be admitted as lay opinions if the requirements of Rule 701 are met. *Osbourn v. State*, 92 S.W.3d 531, 537 (Tex. Crim. App. 2002). This applies even when the witness has experience and training. *Id.*

As a lay witness with sufficient experience and knowledge, Duong was capable, without being qualified as an expert witness, to express her opinion on TFCBT, a subject outside the realm of common knowledge. *Osbourn*, 92 S.W.3d at 537 (noting that even events not normally encountered by most people in everyday life do not necessarily require the testimony of an expert). Unlike the situation with Lomas being unable to identify studies and articles underlying her expert opinion, Duong, as a lay witness, was not required to name scientific research in support of her lay opinion. We find that Duong's testimony was admissible under Rule 701. The trial court's admission of the objected-to evidence was not outside the zone of reasonable disagreement. Issue two is overruled.

### ISSUE THREE—PRIOR CONSISTENT STATEMENTS

By his third issue, Appellant asserts the trial court abused its discretion in admitting State's Exhibit 1 which consists of seven excerpts from J.P.'s forensic interview with Lomas. He contends the statements were not admissible as a hearsay exception under Rule 801(e)(1)(B) because they were made *after* the alleged motive to fabricate arose which was the turmoil associated with J.P.'s parents' separation and resultant divorce proceedings.

11

J.P.'s forensic interview occurred in September 2017, when she was approximately fourteen years old. The video excerpts were played for the jury during Lomas's testimony and concerned the following statements made by J.P. to her during the forensic interview:

(1) J.P.'s description of the first time Appellant abused her on a couch in the living room;

(2) an incident that occurred while J.P. was asleep in a bed with her older sister;

(3) Appellant smelling of alcohol and marihuana during the incidents;

(4) J.P.'s claim that Appellant touched her "down here";

(5) J.P. reporting to Lomas that the incidents happened on several occasions;

(6) a clarification that on one occasion, J.P.'s nose was clogged but on other occasions she could smell Appellant; and

(7) J.P.'s reference to her "middle spot" as her genitals and Lomas asking her if she had ever felt Appellant's middle spot to which she responded that she felt it against her back.

"Rule 801(e)(1)(B) gives substantive, non-hearsay status to prior consistent statements of a witness 'offered to rebut an express or implied charge against the declarant of recent fabrication or improper influence or motive.'" *Hammons v. State*, 239 S.W.3d 798, 804 (Tex. Crim. App. 2007); *Torres v. State*, No. 03-19-00406-CR, 2021 Tex. App. LEXIS 3446, at *7 (Tex. App.—Austin May 5, 2021, no pet.) (mem. op., not designated for publication). For a prior consistent statement to be admissible the following four elements must be met:

(1) the declarant must testify at trial and be subject to cross-examination;

12

(2) there must be an express or implied charge of recent fabrication or improper influence or motive of the declarant's testimony by the opponent;

(3) the proponent must offer a prior statement that is consistent with the declarant's challenged in-court testimony; and

(4) the prior consistent statement must be made *prior* to the time that the supposed motive to falsify arose.

*Hammons*, 239 S.W.3d at 804 (citing *Tome v. United States*, 513 U.S. 150, 156–58, 115 S. Ct. 696, 130 L. Ed. 2d 574 (1995)) (emphasis added).

Here, the significant time periods applicable began in April 2016, when Appellant and his wife separated. She filed for divorce in July 2017. In August 2017, the trial court entered temporary orders in the divorce proceeding. Finally, J.P.'s forensic interview occurred in September 2017. Appellant claims that because J.P. fabricated the allegations against him after he and his wife separated and she filed for divorce, the excerpts do not fall within the hearsay exception of prior consistent statements.

Assuming, arguendo, that the trial court improperly admitted hearsay excerpts from J.P.'s forensic interview because all the elements for prior consistent statements to qualify as a hearsay exception were not met, we nevertheless find against Appellant on the issue. During J.P.'s direct testimony, she offered essentially the same evidence as the seven objected-to excerpts but did so without objection. Erroneously admitted evidence will not result in reversal when substantially similar evidence is admitted without objection, either before or after the complained-of ruling. *Coble v. State*, 330 S.W.3d 253, 282 (Tex. Crim. App. 2010). Issue three is overruled.

13

**ISSUE FOUR—COURT COSTS**

Appellant contends the trial court erroneously assessed court costs of $290.00 under a newly added statute and amended statutes that apply to offenses committed on or after January 1, 2020.[5] Because the offense he was convicted of was committed in 2014, he asserts costs should have been assessed in accordance with statutes in effect at that time. We agree.[6]

Court costs are legislatively mandated obligations resulting from a criminal conviction. *Insco v. State*, No. 03-20-00178-CR, 2021 Tex. App. LEXIS 7248, at *2 (Tex. App.—Austin Aug. 31, 2021, no pet.) (mem. op., not designated for publication). The imposition of court costs on a criminal defendant is a "nonpunitive recoupment of the costs of judicial resources expended in connection with the trial court of the case." *Johnson v. State*, 423 S.W.3d 385, 390 (Tex. Crim. App. 2014).

Appellant acknowledges he did not object to assessment of court costs in the trial court but relying on *London v. State*, 490 S.W.3d 503, 507 (Tex. Crim. App. 2016), he asserts that a challenge to court costs may be raised for the first time on appeal. Under the circumstances of the underlying case, we agree.

*London* holds that "an appellant may generally challenge the imposition of even mandatory court costs for the first time on direct appeal when those costs are not imposed

---

[5] *See* Act of May 23, 2019, 86th Leg., R.S., ch. 1352, § 1.05, 2019 Tex. Gen. Laws 3981, 3985.

[6] Some courts, including this Court, have held that when the State fails to file a brief, an appellate court should conduct an independent analysis of the merits of an appellant's claim of error, limited to the arguments raised at trial by the State, to determine if error occurred. *See generally Little v. State*, 246 S.W.3d 391, 397–98 (Tex. App.—Amarillo Feb. 14, 2008, no pet.) (noting that the failure of the State to file an appellee's brief makes an appellate court's task more time consuming and difficult). In the trial court, court costs were not argued by either party and the State has not contested Appellant's argument on appeal.

14

in open court and the judgment does not contain an itemization of the imposed court costs. *Id.* *London* reaffirmed that "an appellant may not be faulted for failing to object when he . . . was simply not given the opportunity to do so." *Id.*

Appellant was sentenced on November 12, 2021. The *Bill of Costs*, which itemizes all court costs, was prepared on that same date. Unclear from the record, however, is whether court costs were imposed in open court while Appellant and his counsel were present to voice an objection. Without the record establishing that Appellant had an opportunity to object to the imposition of court costs in the trial court, we agree that he may present his complaint for the first time on direct appeal.

The *Bill of Costs* reflects that Appellant was assessed felony court costs of $185.00 and $105.00 for a total of $290.00. Those amounts are applicable to offenses committed on or after January 1, 2020.

Costs in a criminal case in 2014 were authorized by statutes in the Texas Code of Criminal Procedure, the Texas Local Government Code, and the Government Code. A review of those statutes shows Appellant should have been assessed only $244.00 in court costs.[7] As he reflects in his brief, those costs are as follows:

| | |
|---|---|
| Jury fee[8] | $ 20.00 |
| Juror services fee[9] | $ 4.00 |
| Clerk fee[10] | $ 40.00 |

---

[7] Appellant asserts the correct amount of court costs that should have been assessed is $264.00; however, he mistakenly included a jury fee of $40.00 when it was only $20.00 in 2014. The statute was amended in 2015, a year after commission of the offense, to increase the fee to $40.00. *See* Act of May 26, 2015, 84th Leg., R.S., ch. 654, § 2, 2015 Tex. Gen. Laws 2095, 2095.

[8] *See* Act of May 30, 1999, 78th Leg., R.S., ch. 1545, § 64, 1999 Tex. Gen. Laws 5314, 5330.

[9] *See* Act of May 27, 2005, 79th Leg., R.S., ch. 1360, § 5, 2005 Tex. Gen. Laws 4255, 4256.

[10] *See* Act of May 27, 1995, 74th Leg., R.S., ch. 764, § 1, 1995 Tex. Gen. Laws 3969, 3969.

| | |
|---|---|
| Records management fee[11] | $ 25.00 |
| Technology fee[12] | $ 4.00 |
| Security fee[13] | $ 5.00 |
| Consolidated court costs[14] | $ 133.00 |
| Judicial support fee[15] | $ 6.00 |
| Indigent defense fee[16] | $ 2.00 |
| Electronic filing fee[17] | $ 5.00 |

Based on the statutes in effect in 2014, Appellant was overcharged for court costs by $46.00. His fourth issue is sustained.

## REFORMATION OF JUDGMENT

This Court has the authority to modify judgments when the necessary information is available to do so. TEX. R. APP. P. 43.2(b); *Bigley v. State*, 865 S.W.2d 26, 27–28 (Tex. Crim. App. 1993); *Dunbar v. State*, Nos. 03-18-00673-CR, 03-18-00674-CR, 2020 Tex. App. LEXIS 3403, at *16 (Tex. App.—Austin April 23, 2020, no pet.) (mem. op., not designated for publication). Appellate courts have the power to reform whatever the trial court could have corrected by a judgment *nunc pro tunc* where the evidence necessary to correct the judgment appears in the record. *Asberry v. State*, 813 S.W.3d 526, 529 (Tex. App.—Dallas 1991, pet. ref'd). Based on the inaccurate assessment of court costs,

---

[11] *See* Act of May 28, 2005, 79th Leg., R.S., ch. 804, § 2, 2005 Tex. Gen. Laws 2775, 2775–76.

[12] *See* Act of May 31, 2009, 81st Leg., R.S., ch. 1183, § 1, 2009 Tex. Gen. Laws 3753, 3753.

[13] *See* Act of April 11, 1997, 75th Leg., R.S., ch. 12, § 1, 1997 Tex. Gen. Laws 51, 51.

[14] *See* Act of June 1, 2003, 78th Leg., R.S., ch. 209, § 62(a), sec. 133.102(a)(1), 2003 Tex. Gen. Laws 979, 996.

[15] *See* Act of May 15, 2007, 80th Leg., R.S., ch. 1301, § 3, 2007 Tex. Gen. Laws 4371, 4372.

[16] *See* Act of May 26, 2011, 82nd Leg., R.S., ch. 984, § 14, 2011 Tex. Gen. Laws 2461, 2476.

[17] *See* Act of May 16, 2013, 83rd Leg., R.S., ch. 1290, § 2, sec. 51.851(d), 2013 Tex. Gen. Laws 3269, 3270.

the trial court clerk is ordered to prepare an amended *Judgment of Conviction By Jury* and *Bill of Costs* reflecting the amount of court costs as $244 and forward copies of those documents to Appellant, the Texas Department of Criminal Justice, and this Court.

## CONCLUSION

As reformed, the trial court's judgment is affirmed.

Alex L. Yarbrough
Justice

Do not publish.